## MADES *v.* MILLER.

---

### EXECUTORS; INTEREST ON TRUST FUNDS.

1. Executors who have in their hands money belonging to the distributee of an estate, are chargeable with interest thereon if they make use of it themselves, or are negligent either in not paying the money over, or in not investing it or loaning it so as to render it productive.
2. If an executor mingles money belonging to the estate with his own money, it answers the purpose of credit, and he and any co-executor acquiescing in such disposition, are chargeable with interest thereon.

No. 221.  Submitted February 9, 1894.—Decided February 21, 1894.

HEARING on an appeal by the defendants from a decree of the Supreme Court of the District of Columbia, holding an equity term, overruling exceptions to a report of the auditor in a suit against executors by the distributee of an estate for his share in the proceeds of the sale of a house and lot. *Affirmed.*

The COURT in its opinion stated the case as follows:

The bill in this case was filed February 17, 1892, by Charles F. Miller, one of the legatees of August Miller, deceased, against Charles Mades and Henry Miller, executors of his estate, to recover his share of the proceeds of the sale of a house and lot sold by the said executors in accordance with the terms of the will of said August Miller.

Charles F. Miller is the son of August Miller, and is alleged in the answer to be mentally incompetent to manage his estate. In apparent recognition of this fact, the will, made March 27, 1885, tied up the bulk of the estate devised and bequeathed to him, so as to give him the revenue of the same during his life, with remainder to his children.

On July 18, 1885, the testator made a codicil to his will which contains the following provision: "As to my daughter, Louisa Miller, to whom I gave my dwelling, No. 1598 21st street, N. W., in this city, I revoke that gift, desiring that said house and the lot of ground on which the same is situated be sold by my trustees, as soon after my decease as may be convenient, and the proceeds thereof be equally divided between my daughters, Lena Mades, Laura Kaiser, Louisa Miller, and my son Charles F. Miller."

On January 24, 1887, the executors sold the said house and lot, and the net proceeds thereof amounted to $13,176, making the share due each distributee $3,269. This amount was paid each of the distributees, except Charles F. Miller; his share was retained by the executors upon the claim that by the provisions of the will they were to hold the same in trust for him. By consent of the other executor, this money remained in the hands of Executor Mades, who deposited it in his own name, and mingled with his own money, in the Central National Bank of Washington. No interest was paid to the plaintiff Miller during the time the money was in the possession of Mades.

When the bill was filed, the executors answered, claiming the right to hold the money in trust by the terms of the will

and codicil. Upon their motion, the children of complainant were made parties.

Upon the hearing, June 27, 1892, the following decree was passed by Mr. Justice Bradley, holding the special equity term of the Supreme Court of the District of Columbia:

" This cause having been heard by the court on bill and answers herein filed, the court finds that the complainant, Charles F. Miller, is entitled to the sum of three thousand two hundred and sixty-nine dollars ($3,269) and interest on the same from the 24th day of January, 1887, and one-fourth of the rents received by said executors from house No. 1598 21st street, northwest, this city, prior to the sale of same. It is therefore, this 27th day of June, A. D. 1892, ordered, adjudged and decreed that the said Charles Mades and Henry Miller pay over to the said complainant, Charles F. Miller, forthwith, the sum of three thousand two hundred and sixty-nine dollars ($3,269), and that the cause be and is hereby referred to the auditor of this court to ascertain and report to the court the amount of interest and rent due, which the complainant is entitled to."

Upon the passage of this decree, the defendants paid over the principal sum of $3,269 to the complainant. On October 5, 1892, the auditor reported the interest due from January 24, 1887, to the day of payment, June 27, 1892, at six per cent. per annum, to be $1,064.35.

Exceptions were filed to the report, which, coming on to be heard before Mr. Justice Cox, then presiding in the equity court, on January 24, 1893, were overruled. A decree was then passed, requiring defendants to pay said sum to the complainant. From this final decree the appeal has been duly prosecuted.

*Mr. S. T. Thomas* for the appellants.

1. There was no direction in the will of August Miller as to the investment of the share of the complainant in the proceeds of sale of the Twenty-first street house. Interest

will only be charged against an executor or administrator when he has actually received interest, or has been guilty of negligence in not making investments for the benefit of the estate. Williams on Executors, 1844; *Norris' Appeal,* 71 Pa. St., 106; Perry on Trusts, Secs. 468-472. Mere neglect of an executor to invest funds which he may be called on at any time to pay over to distributees is no ground for charging him with interest, if the money has been left in bank or otherwise ready to be paid over if called for. *Burtis* v. *Dodge,* 1 Barb. Ch. (N. Y.), 77; *Minuse* v. *Cox,* 5 John. Ch. (N. Y.), 441. According to the decision of Judge Bradley, the appellee was entitled at once on the sale of the Twenty-first street house to his share of the proceeds. He might have called on the executors for it at any moment. They therefore had no right to invest the money, and hence were not liable to pay interest on it until after they had failed, on demand, to pay it over to the appellee. The appellee was himself guilty of laches in not demanding his money sooner. The time between February 17, 1892, when the present bill was filed, and July 27, 1892, when the principal sum was paid over to the appellee, was taken up in proceedings to have him amend his bill, which being successful, that time, as the basis of a charge for interest, should not be counted against the executors.

In the absence of express provision in the will directing investment and accumulation, something more is necessary, in order to charge executors with interest, than merely mingling trust and individual funds without investment. *Harlan's Accounts,* 5 Rawle (Pa.), 323; *Spear* v. *Tinkham,* 2 Barb. Ch. (N. Y.), 213; *Williams* v. *Pettigrew,* 62 Mo., 460; *Scott* v. *Crews,* 72 Mo., 261. The executors in this case have been treated as though they had been guilty of gross misbehavior. One would suppose, from the severity of the decree appealed from, that they had misappropriated the fund, or had refused to account for interest received, and that the object of the decree was to punish them.

2. At common law interest was not allowed in any case.

In this country it is generally allowed by law on two grounds, namely, on contracts express or implied and by way of damages, either for a default in the payment of a debt or for a use or benefit derived from the money of another. In this case there was no express contract to pay interest, and the law will not imply one unless it be shown that the executors profited by holding the money.

3. Interest is not allowed as damages in the performance of a contract to pay money where the debtor does not know what he is to pay nor when he is to pay it. *Curtis* v. *Innerarity*, 6 How., 146. The executors in this case honestly supposed, until the court decided otherwise, that the proceeds of the sale of the Twenty-first street house was part of the residue of their testator's estate. They were so advised, and the court thought the question important enough to require the appellee's children, as perhaps ultimately entitled to the fund, to be made parties to the bill. So that the executors, until the decision of the court, neither knew what they were to pay nor when to pay it.

*Mr. W. Preston Williamson* for the appellee.

Mr. Justice SHEPARD delivered the opinion of the Court:

1. The house and lot, the distribution of the proceeds of which is in controversy, was taken out of the disposition made in the will by the terms of the codicil. These terms are plain in their meaning, and afford no room whatever for construction. It was the plain duty of the executors, on January 24, 1887, to pay over to each of the four distributees his or her due proportion of the net proceeds of the sale. There was no excuse for withholding the share of Charles F. Miller and forcing him at last to the expense of a suit to obtain possession of it. The executors were in default after that day. If they then entertained a reasonable doubt or difficulty, with respect to the disposition of the money, it was their duty to apply to the court for advice, and they could have brought the fund into court if they desired. *Dunscomb* v. *Dunscomb*, 1 Johns. Ch., 508.

They held the money for more than five years, making no attempt to invest it for the benefit of Charles F. Miller, and paying him no interest. Believing, as they contended they did, that it was the testator's intention they should hold the money during the lifetime of Charles F. Miller, in order to preserve the principal for his children, it was their duty to invest it safely, so as to produce some income for him.

Where money remains in the hands of trustees beyond a reasonable time the burden is on them to explain and justify their failure to invest it, in order to relieve themselves from being made to account for interest thereon. *Lent* v. *Howard*, 89 N. Y., 169; *Knowlton* v. *Bradley*, 17 N. H., 458; *Ringgold* v. *Ringgold*, 1 Harris and G., 11.

They undertake to excuse themselves by saying that they could not safely invest the fund, because they might be called on by order of court to pay it over at any time, and hence were compelled to keep it in readiness to pay over immediately after notice. This excuse is not sufficient. *Dunscomb* v. *Dunscomb, supra*; *Judd* v. *Dike*, 30 Minn., 380.

2. But without regard to other considerations, the fact that the money was deposited in bank by Mades, mingled with his own and subject to his check at all times, renders both him and his co-executor, who acquiesced in this disposition, liable for legal interest on the fund during the whole time of his possession. The true doctrine in this regard is laid down by Chancellor Kent in *Dunscomb* v. *Dunscomb, supra*, as follows: "If the money has been mingled with their own moneys, it has answered the purpose of credit, and the rule is settled that executors and other trustees are chargeable with interest if they have made use of the money themselves, or have been negligent either in not paying the money over, or in not investing it or loaning it so as to render it productive. The rule is founded in justice and good policy; it prevents abuses and it indemnifies against negligence." This rule is supported by the great weight of authority. *Ringgold* v. *Ringgold*, 1 H. & G., 11; *Cannon* v. *Apperson*, 14 Lea, 553; *Simpson* v. *Feltz*, 1

McCord Ch., 213 ; *Knowlton* v. *Bradley*, 17 N. H., 458 ; 1 Perry on Trusts, Sec. 458.

The report of the auditor is in accordance with the decree of the court referring the cause to him for the calculation of the interest, and it would seem that the appeal should have been taken from that decree; but we have treated it as properly taken from the decree overruling the exceptions to the report.

*There being no error in the proceedings below, the decree must be in all things affirmed ; and it is so ordered.*