MANCHESTER GARDENS, Inc., v.
GREAT WEST LIFE ASSUR.
CO. et al.

GREAT WEST LIFE ASSUR. CO. et al.
v. MANCHESTER GARDENS, Inc.

Nos. 11450, 11451.

United States Court of Appeals
District of Columbia Circuit.

Argued Jan. 28, 1953.

Decided June 11, 1953.

Petition for Rehearing or Modification of
Opinion Denied July 27, 1953.

Mr. Harry Friedman, Washington, D. C., for Manchester Gardens, Inc.

Mr. George Morris Fay, Washington, D. C. with whom Mr. John P. Burke, Washington, D. C., was on the brief, for Great West Life Assur. Co. and Metropolitan Mortgage Co.

Mr. William R. Glendon, Asst. U. S. Atty. at time of argument, Washington, D. C., with whom Messrs. Charles M. Irelan, U. S. Atty. at time of argument, Washington, D. C., and Ross O'Donoghue, Asst. U. S. Atty., Washington, D. C., were on the brief, for Franklin D. Richards. Messrs. Leo A. Rover, U. S. Atty., Joseph M. Howard, Asst. U. S. Atty. at time brief was filed, Washington, D. C., and William E. Kirk, Jr., Asst. U. S. Atty. at time of argument, Washington, D. C., for Franklin D. Richards.

Before PRETTYMAN, BAZELON, and WASHINGTON, Circuit Judges.

WASHINGTON, Circuit Judge.

*No. 11450.* This is a controversy between mortgagor and mortgagee. It grows out of the mortgagor's desire to receive interest on certain of its funds accumulated in the hands of the mortgagee, in accordance with the terms of their financing transaction, to assure the payment of taxes, insurance and the like.

The mortgagor, Manchester Gardens, Inc., contracted in the mortgage deed of trust to make monthly payments into two reserves to cover (1) the annual mortgage insurance premiums assessed by the Federal Housing Commissioner, (2) the sums periodically due on fire and other insurance, ground rents, water rates, taxes, and assessments.[1] And the mortgagor's corporate charter in effect calls upon it to make monthly payments into a third reserve to cover the replacement of certain mechanical and other equipment.[2] After making numerous monthly payments into these three reserves, the mortgagor claimed entitlement to interest on these funds while they are in the hands of the mortgagee. The mortgagee disputed this claim and the mortgagor thereupon filed the present suit for a declaratory judgment, damages, and an injunction against foreclosure in the United States District Court for the District of Columbia.[3]

1. Paragraph 2 of the deed of trust provided:

"2. That, in order more fully to protect the security of this Deed of Trust, the Grantor [mortgagor], together with and in addition to, the monthly payments of principal and interest under the terms of the note secured hereby, beginning on the first day of the first month after the date hereof and monthly thereafter until the said note is fully paid, will pay to the Beneficiary [mortgagee] the following sums:

"(a) If and so long as said note of even date and this Deed of Trust are insured under the provisions of the National Housing Act, an amount sufficient to accumulate in the hands of the Beneficiary one month prior to its due date the annual mortgage insurance premium, in order to provide the Beneficiary with funds to pay such premium to the Federal Housing Commissioner pursuant to Section 608 of the National Housing Act, as amended, and Regulations thereunder.

"(b) A sum equal to the ground rents, if any, next due, plus the premiums that will next become due and payable on policies of fire and other hazard insurance covering the premises covered hereby, plus water rates, taxes and assessments next due on the premises covered hereby (all as estimated by the Beneficiary) less all sums already paid therefor divided by the number of months to elapse before one month prior to the date when such ground rents, premiums, water rates, taxes and assessments will become delinquent, such sums to be held by the Beneficiary in trust to pay said ground rents, premiums, water rates, taxes, and special assessments.

"(c) All payments mentioned in the two preceding subsections of this paragraph and all payments to be made under the note secured hereby shall be added together and the aggregate amount thereof shall be paid by the Grantor each month in a single payment to be applied by the Beneficiary to the following items in the order set forth:

"(I) premium charges under the contract of insurance with the Federal Housing Commissioner;

"(II) ground rents, if any, taxes, water rates, assessments, fire and other hazard insurance premiums;

"(III) interest on the note secured hereby; and

"(IV) amortization of the principal of said note.

"Any deficiency in the amount of such aggregate monthly payment shall, unless made good by the Grantor prior to the due date of the next such payment, constitute an event of default under this Deed of Trust."

2. The pertinent language is quoted later in this opinion. Whether the mortgagor is under a legal obligation to make the payments into the reserve is not in issue here. Appellant states his willingness to make these payments. The question here relates to interest.

3. Named as defendants were the Great West Life Assurance Company, as mortgagee, the Metropolitan Mortgage Company, as the mortgagees' agent, and Franklin D. Richards, Federal Housing Commissioner. Walter L. Greene, Federal Housing Commissioner, was later substituted for the last-mentioned defendant. The mortgage loan was insured by the

■ The District Court decided that no interest was payable on the sums accumulated in the reserves numbered (1) and (2) above. It thereupon dismissed the mortgagor's complaint in its entirety, without deciding the question of interest on the third reserve and "without prejudice to the right of the plaintiff to assert claim for interest" on this reserve. The court evidently felt that the principal question before it was whether the plaintiff should be granted equitable relief as to future monthly payments into the reserves, and that the question of law as to plaintiff's right to interest on the replacement fund already accumulated could be settled in a later suit.[4] We do not think this was a sufficient reason for not deciding an issue clearly presented by the pleadings. While the granting of declaratory relief is largely within the discretion of the court,[5] we think that where a court decides some of the issues in a case it should not decline (without good reason) to decide related issues which are ripe for decision and which may otherwise simply give rise to further litigation. Cf. Ward v. Deavers, 1953, 92 U.S.App.D.C. ——, 203 F.2d 72. We find no such reason here.

In the circumstances, it would no doubt be proper to remand the case for determination of this issue, relative to the third fund, by the District Court. But since the question is one of law and has been briefed and argued here on an adequate record, we think it preferable to decide it here. We shall deal with it at the outset.

The reserve for replacements is established in the corporate charter of the mortgagor. By its provisions—

"[SIXTH] (f) Anything to the contrary herein notwithstanding, no dividends shall be paid upon any of the

capital stock of the corporation * * * until a reserve fund for replacements is first established and maintained by the allocation to such reserve fund in a separate account with the mortgagee (or in the case of a deed of trust with the beneficiary) or in a safe and responsible depository designated by the mortgagee * * * of an amount equal to One Hundred Twenty-Three Dollars and Sixty-Seven Cents ($123.-67) and a like amount monthly thereafter. Such fund, whether in the form of a cash deposit or invested in obligations of, or [obligations] fully guaranteed as to principal and interest by the United States of America, shall at all times be under the control of the mortgagee. * * *"

We think that under this language the mortgagor has a clear choice, exclusive of other alternatives: it can make a cash deposit, or it can deposit with the mortgagee obligations issued by the United States or fully guaranteed by it as to principal and interest. It cannot, if it chooses to make a cash deposit, require the mortgagee to pay it interest at the legal rate. There is no showing that any of the parties to this financing transaction contemplated such a possibility. No more does the mortgagor comply with the charter provision if it makes a cash deposit in an institution of its own choosing—a local building association —and hands the passbook over to the mortgagee, as was attempted in this case. The language of the charter simply does not authorize such a procedure.[6] The passbook is plainly not the exact equivalent of cash. And nothing in the record indicates that it is a substantial equivalent, so as to produce a fund "at all times * * * under the control of the mortgagee." Nor does a passbook in a building association fall with-

Federal Housing Administration, which holds the mortgagor's preferred stock.

4. The court said: "If there is a question of liability for interest on these payments, that question could be settled by a suit; but certainly there is no basis on which I think this court of equity can come in and say, 'You have got to handle it differently from what the parties agreed on.'"

5. Williams v. Virginia Military Inst., 1952, 91 U.S.App.D.C. 206, 198 F.2d 980, certiorari denied 345 U.S. 904, 73 S.Ct. 640.

6. Whether the mortgagee would be justified in declaring a default under the deed of trust by reason of the mortgagor's conduct in this regard is not before us. We pass only on the charter provision, quoted above.

in the category of obligations fully guaranteed by the United States as to principal and interest, even if deposits made therein are insured as to principal (only) by the Federal Savings and Loan Insurance Corporation, an agency of the United States.

■ As to the first two reserves, established by the deed of trust, we agree with the District Court that the mortgagor is not entitled to interest, either on the funds already accumulated or on future monthly payments. The charter provision expressly gives the mortgagor the opportunity to secure interest on the funds in the replacement reserve by depositing obligations of a described category. In contrast, the deed of trust is altogether silent on the question of interest. The reserves provided for in that deed are small in size and regularly emptied. They were established under the terms of a detailed financial contract, entered into as a result of arms-length negotiation. The contract contains full provision for the computation and disposition of these reserves and for the consequences of failure to make the required payments into them. Under the circumstances, it is scarcely credible that the parties understood that the reserves were to carry interest but neglected to express their understanding. More than this, we think the parties' conspicuous failure to provide expressly that interest should be paid is,

under the circumstances of this case, equivalent to an agreement that it should not be paid.[7] In other situations there may perhaps be room for recovery of interest on some nonconsensual basis, such as unjust enrichment of the person holding the funds or the other party's deprivation of their use.[8] But no such basis of liability for interest can exist in a case like the present, where the parties must be held to have agreed that interest shall not be paid.

Another grievance stated in the complaint related to the mortgagee's failure to protest certain taxes paid by it from the reserves. This will be dealt with in the concluding portions of this opinion.

*No. 11,451.* In a cross-appeal, the mortgagee seeks attorney's fees in respect of the present litigation. It relies on a covenant of the deed of trust that the mortgagor is to pay "all costs and expenses and attorney's fees * * * of the Trustee and of the Beneficiary [mortgagee] in case of any litigation involving this property * *. *," as well as on a recital in the preamble that the deed was designed, inter alia, to secure the reimbursement to the Trustee and Beneficiary of "any and all costs and expenses (including reasonable attorney's fees) incurred or paid on account of any litigation at law or in equity which may arise in respect to this Trust, or to the indebtedness or to the property herein mentioned * * *."[9]

7. This conclusion is reinforced when it is remembered that though the plaintiff is apparently contending for interest at the legal rate on the reserve funds, it is itself only paying 4% on the mortgage loan proper.

8. See Kishi v. Humble Oil & Refining Co., 5 Cir., 1925, 10 F.2d 356; cf. United States v. State of New York, 1896, 160 U.S. 598, 16 S.Ct. 402, 40 L.Ed. 551; New Amsterdam Cas. Co. v. W. T. Taylor Const. Co., 5 Cir., 1927, 21 F.2d 1002; Peterson v. Chorley, 1930, 103 Cal.App. 783, 284 P. 956; see also Okeechobee County, Fla. v. Nuveen, 5 Cir., 1944, 145 F.2d 684; Brownell v. City of St. Petersburg, 5th Cir., 1942, 128 F.2d 721; 1 Sedgwick, Damages §§ 292–298 (9th Ed.1912); McCormick on Damages §§ 51, 57a (1935). For the British view, see Mayne's Treatise on Damages pp. 151–152 (10th Ed.1927), citing Harington

v. Hoggart, 1 B. & Ad. 577, 9 L.J.K.B. (o.s.) 14, 109 Eng.Rep. 902 (1830); Meymott v. Meymott, 31 Beav. 445, 54 Eng. Rep. 1211 (1862). Appellant here argues that the mortgagee is a trustee of the funds, and as such under a duty to invest them for its benefit, or pay interest. We disagree. No doubt the mortgagee is obliged to apply the funds to the purposes intended. But it does not follow that the mortgagee must invest or pay interest on them. Cases such as Mades v. Miller, 1894, 2 App.D.C. 455, dealing with the duties of the executors of an estate, are inapplicable.

9. A more complete statement of these provisions is the following:

"The Grantor, in order more fully to protect the security hereof, covenants and agrees as follows:

* * * * *

The claim for attorney's fees was not raised on the pleadings. After the District Court had announced its intention to dismiss the complaint, the defendant mortgagee submitted a proposed order to that effect which included a clause directing the plaintiff to pay defendants' attorney's fees. After extended argument on the point, the District Court entered an order which dismissed the complaint, "without prejudice to the right of the defendants' attorneys to assert claim for attorneys fees as provided for in the deed of trust." J.A. 44.

We think the court should have ruled on the claim for fees. The issue appears to have been as fully tried as possible, with the implied consent of the parties,[10] despite the fact that it was not raised by the pleadings; under the circumstances, the fact that it was not so raised is immaterial. Fed.R.Civ.P. rule 15(b), 28 U.S.C.A. Here again we think it appropriate to express our views on the question of law presented,. as it has been fully briefed in this court.

The instant litigation seems clearly covered by the literal language of the covenant: it obviously "involved" the property mortgaged, insofar as plaintiff sought to restrain foreclosure on the property, and asked "That the court require defendant mortgagee to pay taxes on [it] under protest * * *." And plaintiff's demands that defendant be ordered to pay it interest, and that it be permitted to deposit reserve funds in interest-bearing accounts, must also be taken to "involve" the property, in the light of the purpose stated in the preamble to reimburse the Trustee and Beneficiary on account of "all costs and expenses (including reasonable attorney's fees) incurred" in litigation "in respect to this Trust."

Nor does the fact that this litigation was initiated by the mortgagor remove it from these contractual provisions: the language of the covenant covers "all costs and expenses and attorney's fees * * * in case of any litigation."[11] No doubt the parties may have contemplated that the most likely use of the provisions would be in connection with foreclosure proceedings initiated by the Trustee at the behest of the Beneficiary. But this probability cannot be taken to constrict the sweeping coverage of the language used, especially in view of the modern availability of declaratory relief to all parties to a contract.

It appears then that plaintiff is liable for defendant's attorney's fees under the pro-

---

"8. To pay all costs and expenses and attorney's fees (including continuation of abstract) of the Trustee and of the Beneficiary in case of any litigation involving this property or in presenting claim under any administration or other proceeding where proof of claim is required by law to be filed."

"And Whereas, the Grantor desires to secure to the Beneficiary * * * the performance of the covenants herein contained * * * and also to secure the reimbursement to the holder or holders of said note and to the Trustee or substitute trustee, and any purchaser or purchasers, grantee or grantees under any sale or sales under the provisions of this Trust for all money which may be advanced as herein provided for, and for any and all costs and expenses (including reasonable attorney's fees) incurred or paid on account of any litigation at law or in equity which may arise in respect to this Trust, or to the indebtedness or to the property herein mentioned, or in obtaining possession of the premises after any sale which may be made as

hereinafter provided for * * *."

Some reliance is also placed on the following:

"Second: Upon any default being made in the payment of said note or of any instalment of principal or interest thereon * * *; or upon default in payment on demand of any sum or sums advanced by the holder or holders of said note on account of any costs and expenses of this Trust, or on account of any such tax or assessment, water rate or insurance, or expense of litigation * * * the said Trustee * * * shall sell the aforesaid land and premises and improvement at public auction * * *."

10. Both parties contend, on appeal, that the trial court should have decided the question.

11. Compare the interpretation of statutory provisions for the recovery of attorney's fees by an insured in actions against his insurer: "under these statutes recovery is not governed by which party sought the declaratory judgment." 37 Minn.L.Rev. 140 (1953).

visions of the deed of trust, unless these provisions are for some reason unenforceable in whole or in part. There can be no doubt of the general validity of such provisions in most jurisdictions, at least so long as they do not require more than indemnification of the lender for attorney's fees reasonably and actually incurred in connection with the debt.[12] We are prepared to adopt that general rule.

■ On the other hand, sound policy does not permit, nor precedent require, that such provisions be enforced according to their tenor in every case. Thus, in the case of stipulations for a specific sum, or a specific percentage of the remaining debt, courts customarily do not feel themselves concluded as to the amount due, but allow only such fees as are reasonable in amount and have been actually incurred.[13] Similarly, where the merit or necessity of the creditor's claim or defense is successfully challenged, courts may decline to enforce attorney's fee provisions.[14] When contractual provisions for payment by a debtor of his creditor's attorney's fees and costs are invoked, such payment should not be enforced in the full amount of the creditor's legal expenses (even though actually incurred, and reasonable in amount) where his claims or defenses giving rise to such expenses lack substantial merit. In no event should the sum allowed be so large as to amount to an undue penalty for taking one's grievance to the courts. And if the creditor has benefitted by having a doubtful question of law resolved, thus reducing the area of potential future dispute, the debtor should bear only a fair portion of the burden.

■ In the case at bar, the issues have all been resolved in the creditor's favor. It is true that plaintiff asked that defendant-mortgagee be required, in the disbursement of moneys paid into the reserve fund by the mortgagor, to pay certain taxes under protest. It appears that this demand may in fact be meritorious: the amount assessed may have been incorrect.[15] But plaintiff failed to plead or prove that defendant's failure to pay the taxes under protest in any way harms it; it did not state a claim upon which relief might be granted. Under the circumstances, it can-

12. Citizens National Bank of Orange, Va. v. Waugh, 4 Cir., 1935, 78 F.2d 325, 100 A.L.R. 939; see also Annotation, 17 A.L.R.2d 288 (1951); 3 Williston, Contracts § 786 (Rev.Ed.1936). The question has not been directly passed upon by this court, cf. Lockwood v. Lindsey, 1895, 6 App.D.C. 396, though the Municipal Court of Appeals has upheld similar provisions, insofar as they require indemnity for "reasonable fees necessarily and properly paid or incurred." United States v. Reed, D.C.Mun.App., 1942, 31 A.2d 673, 675.

13. Merchants Bank of Grenada v. Thomas, 5 Cir., 1903, 121 F. 306; Citizens National Bank of Orange v. Waugh, supra, and cases cited; United States v. Reed, supra.

14. For example, in Tyler v. Walker, 1898, 101 Tenn. 306, 47 S.W. 424, the debtor, who had agreed that, "if suit is brought on this note, we will pay all attorney's fees and costs of collecting", brought suit to enjoin foreclosure on the ground that the creditor was usuriously seeking to force payment of more than the amount due. The creditor filed a cross-bill asking foreclosure together with attorney's fees and costs. The trial court upheld plaintiff's claim, finding that his "bill was * * * properly filed to enjoin the sale." It thereupon denied the creditor's claim for attorney's fees and costs, even though it did decree a sale for the amount properly owing. The latter ruling was affirmed on appeal. The court held that "such fee is not collectible when suit is needlessly brought, or when it is brought to enforce an unjust demand, or to coerce more than is actually and justly due." It thought defendant's cross-bill was not only brought to coerce more than actually due, but was also unnecessarily brought, "as the trust deed could have been enforced out of court for the amount legally due." See also D. A. Tompkins Co. v. Monticello Cotton Oil Co., C.C., 1905, 137 F. 625, 631 ("Finding the [debtor's] defense in part, at least, meritorious, the court feels obliged to disallow the [creditor's] claim for attorney's fees * * *"); United States v. Reed, supra; cf. Wright v. Market Bank, Tenn.Ch.App.1900, 60 S. W. 623; Peebles v. Yates, 1906, 88 Miss. 289, 40 So. 996.

15. We are informed that after the bringing of this suit the mortgagee agreed to meet the mortgagor's wishes in this regard.

not be said that the mortgagee's defenses to any of plaintiff's claims lacked substantial merit. The mortgagee is therefore entitled, subject to what has been said above, to its reasonable attorney's fees actually incurred in defense of plaintiff's action. The case must be remanded to the District Court for a determination of the proper amount, consistent with this opinion.

So ordered.