George and Kathryn SCHMIDT,
Plaintiffs,

v.

INTERSTATE FEDERAL SAVINGS &
LOAN ASSOCIATION, Defendant.

Civ. A. No. 75–1197.

United States District Court,
District of Columbia.

Nov. 1, 1976.

Benny L. Kass, Washington, D. C., and David S. Goldberg, Rockville, Md., for plaintiffs.

Bernard I. Nordlinger, Washington, D. C., for defendant.

## OPINION AND ORDER

SIRICA, District Judge.

This is an action for declaratory, injunctive and monetary relief to recover certain payments made to defendant Interstate Federal Savings & Loan Association (Interstate) by plaintiffs George and Kathryn Schmidt, who prepaid a home loan they had with Interstate prior to the date of maturity. The complaint is based on alleged violations of federal regulations, breach of contract and unjust enrichment. The answer admits the charges were made but denies that they were wrongful and sets forth a counterclaim to recover reasonable attorney fees. The case is presently here on Interstate's motion for summary judgment as to plaintiffs' federal claim and cross-motions for summary judgment as to Interstate's counterclaim.

### I.

The essential facts are these. On June 28, 1972, the Schmidts took out a loan from Interstate to purchase a home in Rockville, Maryland. Interstate is a Savings and Loan Association organized under the Home Owners' Loan Act of 1933, *as amended*, 12 U.S.C. § 1461 *et seq.* (1970) and regulated by the Federal Home Loan Bank Board (FHLBB) through FHLBB regulations. The loan was secured by a deed of trust on the home and was evidenced by a promissory note in the amount of $45,300. The note called for payments of $325.00 per month payable the first of each month for 30 years until June 1, 2002. Additionally, the note permitted the Schmidts to "make payments in larger amounts or to pay the entire unpaid balance of this indebtedness on the first day of any month after three

years from the date" the note was signed. Just less than three years after the loan was made, the Schmidts sought to prepay the note in full and, on April 11, 1975, they delivered Interstate a check for $44,418.67 representing the amount stated by Interstate as necessary to fully pay off the obligation.[*] This amount reflected the unpaid principal ($44,151.05), a release fee ($10.00), interest for the entire month of March as well as April ($570.26) and a prepayment charge for retiring the obligation before maturity ($375.22).

Although the Schmidts paid the full amount called for by Interstate, they did so under protest and questioned whether Interstate had the right to demand either the prepayment charge or the interest attributable to the period in April after the debt was fully paid (approximately $180.00). This action action followed. In their complaint, the Schmidts have alleged that the prepayment and April interest charges (1) violate applicable FHLBB regulations, (2) are in breach of contract and (3) unjustly enrich defendant Interstate. Defendant has answered by denying the claims and by asserting a counterclaim based on a clause of the deed of trust obligating the Schmidts to pay Interstate for attorney fees incurred in connection with litigation arising out of the loan transaction.

Interstate has moved for summary judgment on plaintiffs' federal cause of action and both parties have moved for summary judgment on the counterclaim.

### II.

Before turning to the merits of Interstate's motion for summary judgment on plaintiffs' federal claim, it is helpful to set out the several points on which the parties are in agreement. Both parties agree that the Schmidts took out a home loan from Interstate under a 30 year deed of trust and that, on fully paying off the loan before the date of maturity, the Schmidts were

---

[*] This figure takes into account a credit of $687.86 for taxes and insurance payments held in escrow.

charged a prepayment fee and interest for the remainder in April after the debt was paid on April 11, 1975. The parties also agree that Interstate is a member of the FHLBB and is governed by FHLBB regulations. Finally, both parties agree that the prepayment transaction at issue is to be judged by reference to 12 C.F.R. § 545.6–12(b), which provides in pertinent part:

> Each borrower from Federal associations on a loan secured by a home . . . shall have the right to prepay the loan *without penalty* unless the loan contract makes *express provision* for a prepayment penalty. (emphasis supplied)

Against this background of substantial agreement, the areas of dispute between the parties stand out clearly. They are (A) whether the challenged payments made by the Schmidts to Interstate are to be characterized as a "penalty" within the meaning of the FHLBB regulation and (B) whether the loan agreement fails to make "express provision" for charging a prepayment penalty. For the reasons which follow, this Court concludes that the payments at issue should be characterized as a prepayment penalty and that no provision of the loan documents makes express provision for them.

### A. *Prepayment Penalty.*

The test for characterizing a charge as a "prepayment penalty" is whether the amount "would not be imposed if the note were paid at maturity instead of at an earlier date." *Goldman v. First Federal Savings & Loan Association of Wilmette,* 518 F.2d 1247, 1252 (7th Cir. 1975). Applying the *Goldman* test to the facts of this case, it is clear that the $375.22 prepayment fee paid to Interstate falls within the definition of "prepayment penalty." For had the Schmidts not decided to fully pay off their loan before maturity, they would not have incurred the prepayment charge.

Similarly, the approximately $180.00 charge for interest attributable to April 12 through April 30 also qualifies as a prepayment penalty. The reason for this is clear. By charging the Schmidts interest for the entire month of April, Interstate was in effect requiring them to pay advance interest for the privilege of prepaying their loan. An examination of the loan documents indicates that, before the date of prepayment with one insignificant exception, the Schmidts were never required to pay interest in advance. Settlement occurred on June 28, 1972, and on that date two days advance interest was paid to bring the loan up to July 1 and put it on a first-of-the-month basis. The next payment was due on August 1, 1972, and covered the interest charge for July. From that time forward, monthly payments were called for on the first of each month until June 1, 2002, covering interest for the immediately preceding month.

Figuring the Schmidts' payments on this basis, no interest for April 1975 was due until May 1, 1975. It follows then, that by charging the Schmidts interest for the entire month of April as an incident to prepaying the loan in full on April 11, Interstate was receiving a premium which it would not have received had the note been paid at maturity. Accordingly, the portion of the interest charge representing the period April 12 through April 30 must be characterized as a prepayment penalty.

### B. *Express provision for the prepayment penalty.*

Having found that the challenged charges qualify as a "prepayment penalty," the next question is whether the loan agreement makes "express provision" for them as required by 12 C.F.R. § 545.6–12(b).

As to the $375.22 prepayment fee, Interstate points to the following clause in the note and argues that it expressly provides for the charge:

> The right is hereby reserved to make payments in larger amounts or to pay the entire unpaid balance of this indebtedness on the first day of any month after three years from the date hereof.

As to the April interest charge, Interstate refers to this provision:

Payments of interest on the principal sum shall be made on the first day of each and every month.

In assessing whether these provisions comply with the "express provision" requirement of the FHLBB regulation, this Court is mindful that the purpose of the regulation is to alert prospective borrowers to the potential cost involved in prepaying their loans. Given that purpose, it cannot fairly be said that either of these clauses *expressly* provides for the payment of a prepayment penalty. Neither clause mentions the word "penalty"; nor do they state directly the amount or the conditions for imposing a prepayment penalty. If the borrower is at all to be alerted to the prospect of a prepayment charge, it is by means of inference and implication. That being so, the clauses fail to make the *express* disclosure required by the regulation.

### III.

Both parties have moved for summary judgment on Interstate's counterclaim for attorney fees. The counterclaim is based on a provision of the loan agreement requiring the Schmidts to pay Interstate:

reasonable counsel fees incurred or paid on account of any litigation at law or in equity which may arise with respect to . . . [the] indebtedness of the [Schmidts].

Interstate contends that this clause authorizes an award of attorney fees even though the present litigation was commenced after the indebtedness was fully paid. The Schmidts, on the other hand, contend that the clause in question does not extend to litigation of this kind and that, even if it does, enforcement of the clause should be denied as a matter of judicial discretion.

Both parties rely on *Manchester Gardens v. Great Western Assurance Co.*, 92 U.S. App.D.C. 320, 205 F.2d 872 (1953) to support their respective contentions. In that case, an attorney fee provision was held to authorize an award of fees incurred in litigation brought to obtain interest on money held by a trustee under a deed of trust. Interstate reads *Manchester Gardens* as permitting the recovery of fees under any circumstances where a broad counsel fee provision is in effect. However, as the plaintiffs here point out, the *Manchester Gardens* Court found enforcement of counsel fee clauses to depend on the facts and circumstances surrounding each particular case since

sound policy does not permit, nor precedent require, that such provisions be enforced according to their tenor in every case. [*Id.* at 878.]

In so holding, the Court cautioned against enforcing attorney fee clauses where "the merit or necessity of the creditor's claim or defense is successfully challenged" and where the litigation has benefitted the lender "by having a doubtful question of law resolved, thus reducing the area of potential future dispute." *Id.*

Applying these standards to the present case, there is no question but that the questions of law to be decided are doubtful and hotly contested. A review of the relevant case law shows that the application of the FHLBB regulation at issue here was considered on only one occasion and, in that case, several important questions were left unresolved. *See Goldman v. First Federal Savings & Loan Association of Wilmette, supra.* Under such circumstances, lenders as well as borrowers stand to benefit from resolution of the legal questions raised by this case. Moreover, while it is too early to say whether plaintiffs will ultimately prevail on their claims, it is clear that these claims are substantial. For these reasons, the Court finds that enforcement of the attorney fee provision as sought by Interstate is inappropriate and must be denied.