JOHN WARREN CARPENTER & others *vs.* SUFFOLK
FRANKLIN SAVINGS BANK.

Suffolk.    November 7, 1972. — January 9, 1973.

Present: TAURO, C.J., REARDON, HENNESSEY, & KAPLAN, JJ.

*Mortgage,* Of real estate: profits on tax payments. *Escrow. Trust,*
What constitutes. *Interest. Bank and Banking. Equity, Pleading
and Practice,* Bill.

A bill in equity which specifically averred mortgage and loan agree-
ments and contained a declaration of their alleged legal effect sat-
isfied G. L. c. 231, § 7, Eleventh. [771–772]
Neither G. L. c. 168, § 35, G. L. c. 167, § 58, nor any other statute,
dictates either that a bank must account to its mortgagor for profits
earned on the mortgagor's tax payments or that a bank has a right
to retain such profits. [772–775]
A bank which holds in escrow its mortgagor's real estate tax pay-
ments holds those payments in trust and must account to its
mortgagor for any profits realized on them. [776–781]

BILL IN EQUITY filed in the Superior Court on Sep-
tember 17, 1970.

The suit was heard by *Ponte,* J., on demurrer.

*Herbert H. Hershfang & Lawrence D. Shubow* for the
plaintiffs.

*Richard H. Lovell* for the defendant.

*David W. Walker* for the Savings Banks Association
of Massachusetts, amicus curiae.

*John J. McCarthy & Charles J. Bowser, Jr.,* for the
Massachusetts Coöperative Bank League, & *Sanford
A. Kowal,* for the League of Women Voters of Boston,
amici curiae, submitted briefs.

TAURO, C.J.    The plaintiffs appeal from an interlocu-
tory decree of the Superior Court sustaining the de-
fendant's demurrer and from a final decree dismissing
the plaintiffs' bill in equity for declaratory relief.    The
bill was brought by the plaintiffs on their own behalf and
for members of a class similarly situated.    The essen-
tial allegations in the plaintiffs' bill were that they own

real property within the city of Boston which is mort-
gaged to the defendant (bank) as security for loans by
the bank; that the mortgages require the mortgagors
to make monthly payments to the bank of one-twelfth
of the annual municipal real estate taxes upon the
property as assessed or estimated by the bank; that the
plaintiffs have complied with the requirement to remit
tax payments to the bank; that the bank has paid these
tax moneys to the taxing municipality when due. The
plaintiffs, however, allege that during the years of
1965 through 1970, the bank has commingled the tax
payments with its own assets; that during the interval
between payments by the plaintiffs and the time when
the taxes are due to the municipality, the bank has in-
vested these payments for profit. The plaintiffs assert
that the tax payments are held by the bank "as escrowee"
and that the investment profits on the tax payments
belong to them but that the bank has refused to pay or
account for profits so realized.

Upon these allegations, the plaintiffs pray for an
accounting of the earnings realized, an order for pay-
ment of the plaintiffs' attorneys' fees out of the fund
owed to the class represented, and a declaration that,
since the bank has no beneficial interest in the tax
moneys, any profits realized on such moneys belong to
the plaintiffs. Alternatively, the plaintiffs pray that the
bank be ordered to pay the tax moneys to the munici-
pality immediately upon receipt.

The bank demurred to the plaintiffs' bill on the
grounds that the bill failed to state a cause of action, and
lacked both the basis for equitable relief and the sub-
stantive facts upon which the alleged right to relief
depends.

The Superior Court judge entered an interlocutory
decree sustaining the bank's demurrer without leave
to amend and a final decree dismissing the plaintiffs' bill
for failure to state any basis for granting the declaratory
relief requested.

In their bill the plaintiffs allege that they have mort-

gaged their real property to the bank as security for loans. The mortgage and loan agreements were not specifically set forth in the pleadings. It has been held that the specific averment of a written instrument and a declaration of its alleged legal effect is sufficient to declare on the instrument. *Suffolk Bank* v. *Lowell Bank,* 8 Allen 355, 357. General Laws c. 231, § 7, Eleventh, states in part: "Written instruments shall be declared on by setting out a copy or such part as is relied on, *or the legal effect thereof,* with proper averments to describe the cause of action" (emphasis supplied). We believe that since the plaintiffs' pleadings make a specific averment of the mortgage and loan agreements and contain a declaration of their alleged legal effect, such averment and allegations furnish a sufficient basis for a suit in equity, provided that the underlying cause of action is viable.

If the relationship created between the plaintiffs and the defendant by the mortgages, loans and payment of tax instalments is such that the defendant is under a duty to account to the plaintiffs for any profits returned on investment of the tax payments, then the plaintiffs' bill states a claim upon which the requested relief can be based and sufficient facts upon which the right to relief depends.

1. In so far as the nature of the alleged relationship between the plaintiffs and the defendant centers upon the interpretation of certain statutes, we express our views on the import of those statutes. See *South Shore Natl. Bank* v. *Board of Bank Incorporation,* 351 Mass. 363, 368.

The plaintiffs argue that the duty of the defendant to account for any profits on the tax payments arises from the legislative framework surrounding the transaction. We cannot agree. It is clear that since 1969, G. L. c. 168, § 35, par. 4, as appearing in St. 1969, c. 278, § 1, has required any note or mortgage issued by the bank to include "payment, at least quarterly, of a proportionate part of the estimated real estate taxes and betterment

assessments on the mortgaged real estate if the amount of the loan exceeds seventy per cent of the value of the real estate." Throughout the years under consideration the requirement for payment of taxes as part of mortgage and loan agreements has been tied to varying percentages of real estate values. E. g., G. L. c. 168, § 35, pars. 5 and 6, as appearing in St. 1955, c. 432, § 1, deleted by St. 1969, c. 278, § 1; G. L. c. 168, § 35, par. 6A, inserted by St. 1964, c. 219. But since 1961, G. L. c. 167, § 58, inserted by St. 1961, c. 533, has stated that "Any note or mortgage given to a bank in connection with a real estate loan may contain conditions requiring the periodic payment of estimated betterment assessments, taxes, and premiums for fire insurance . . .." The percentage amounts of the plaintiffs' mortgage loans as they related to the value of the mortgaged properties do not appear in the bill,[1] but regardless of the percentage amounts here in question, the defendant bank had the statutory right to require tax payments as part of the mortgage and loan agreements.

2. The fact that the defendant had the right to include tax payments as part of the mortgage and loan agreements does not resolve the question whether the defendant could invest the tax payments until due to the municipality.

Until 1967 the Legislature had not specifically authorized banks, such as the defendant, to invest the tax payments while awaiting payment to the municipality. The plaintiffs allege that prior to 1967 the bank had no right to invest the tax payment funds. The answer to this issue depends on the ultimate conclusion whether a trust has in fact been created and the rights and obligations incidental thereto.

In 1967 the Legislature enacted St. 1967, c. 348, amending G. L. c. 167, § 58, by adding the following

---

[1] The amicus curiae brief of the League of Women Voters of Boston states that "the mortgage loans involved represented 50% and 60%, respectively, of the value of the mortgaged properties."

sentence: "Amounts collected for real estate taxes while awaiting payment to a city or town may be invested in obligations legal for savings banks and may not be allocated for any other purpose, except with the written permission of the mortgagor given at the time of default or thereafter."

The 1967 amendment was struck later in the year and St. 1967, c. 809, was enacted to replace the above quoted language. As a result, since December 26, 1967, the second sentence of G. L. c. 167, § 58, read as follows: "Amounts collected from a mortgagor or his successors in title by a bank for the payment of taxes on the mortgaged real estate may, until such taxes are due and payable, be invested in obligations legal for such bank, and, except in the case of foreclosure of the mortgage, shall not be used for any other purpose without the written consent of the mortgagor; provided, however, that such amounts may be returned or allowed as a credit to the mortgagor or his successors in title upon payment in full of the indebtedness secured by the mortgage."

Although the 1967 statute authorized the defendant bank to invest tax payments until due, it did not indicate which of the parties, the mortgagor or the mortgagee bank, had the right to any profit returned upon such investments.

3. The plaintiffs claim support for their view that any profits from invested tax payments should be accounted for from the preamble to St. 1967, c. 809, enacting the present second sentence of G. L. c. 167, § 58. The preamble states that the purpose of the act is: "to authorize the use of amounts collected by banks for real estate taxes in accordance with applicable laws and thereby to facilitate the discharge of mortgage obligations and the sale and refinancing of mortgaged real estate . . .." We do not share the plaintiffs' view.

It appears that the treatment of mortgage tax payment funds is presently the subject of considerable legislative activity. For the 1972 session several bills were filed proposing various modes of treatment for such

funds. Some bills would require payment of interest accumulated on the funds to the mortgagor (e.g. Senate Bill No. 198, Senate Bill No. 202, House Bill No. 1083), while others call for payment to the cities and towns at more frequent intervals than yearly (e.g. House Bill No. 2045), or payment of interest to the mortgagor in lieu of more frequent payments (e.g. Senate Bill No. 206, House Bill No. 689). The Governor submitted a bill requiring banks that are obligated by statute to collect periodic tax payments to pay over the taxes twice a year (Senate Bill No. 1291), and it appears that the joint Committee on Banks and Banking has been studying the matter of the treatment of tax deposits (see House Bill No. 5998).

Taking into account this legislative activity relating to mortgage tax payments, we believe that the existing statutes regulating banks in this area do not dictate either that the defendant must return profits on tax investments to mortgagors or that it has a right to retain them.

Although the statutes do not require the payment of tax investment profits to mortgagors, we do not think that the defendant is precluded by statute [2] from making such payments. [3]

4. Having concluded that the statutes neither require nor prohibit the payment of interest to mortgagors on tax deposits, we examine the question whether the plaintiffs have, nevertheless, made sufficient allegations that could provide a basis for an accounting to be made to them of profits earned on the tax payments. This requires an examination of the nature of the alleged relationship

---

[2] We think that legislation which would prohibit such payments would be open to serious constitutional question.

[3] We note that the brief submitted by the League of Women Voters of Boston as amicus curiae states that a certain bank in Worcester, Massachusetts, "has publicly announced that it pays interest on tax escrow deposits." There may indeed be other banks within the Commonwealth that return tax investment profits to mortgagors and we perceive nothing in the statutes that would prohibit such payments. Although these assertions are not part of the record, we note that the defendant's counsel, in oral argument, conceded that some banks do make such payments.

between the plaintiffs and the defendant as set forth in the pleadings.

The plaintiffs' bill alleges that they have mortgaged their real estate to the defendant as security for loans. The relationship between a mortgagor and mortgagee in Massachusetts is initially one of agreement. See *Milton Sav. Bank* v. *United States*, 345 Mass. 302, 306, and *Hammond* v. *Lovell*, 136 Mass. 184, 186. The mortgagee holds the legal title and the mortgagor retains an equity of redemption accompanied by a right to possession. *Milton Sav. Bank* v. *United States*, 345 Mass. 302, 305. The requirements of particular mortgage and loan agreements may, however, give rise to additional obligations on the part of mortgagor or mortgagee. See *Bennett* v. *Worcester County Natl. Bank*, 350 Mass. 64, 65–66.

The plaintiffs' bill alleges that their mortgages "recite an obligation on the part of the mortgagors to make periodic payments of municipal real estate taxes in monthly instalments . . . estimated by the defendant." The bill also states that "the defendant in October of each year remitted payments to the tax collector . . . in satisfaction of the real estate taxes assessed upon the plaintiffs for the pertinent year."

The bill designates the instalments paid to the bank as "real estate taxes." We think that it is clear from the bill that the tax payments were designated by the mortgagors for a specific purpose, namely to pay the real estate taxes. When money is deposited with a bank, absent an expressed intention to establish a special deposit, the bank becomes a simple debtor to the depositor. *Laighton* v. *Brookline Trust Co.* 225 Mass. 458, 459–460. From such a relationship no trust arises because "[a] debt is not a trust." Restatement 2d: Trusts, § 12. Such funds become a part of the bank's assets and may be commingled with other general assets. The plaintiffs, however, allege that the tax payments were held by the defendant "as escrowee." In the circumstances of this case an escrow account would tend to negate the notion of a debtor-creditor relationship. See *Childs* v. *Harbor*

*Lounge of Lynn, Inc.* 357 Mass. 33, 35.

Where the mortgagor pays funds to a bank with an expressed purpose that the funds shall be used for a particular purpose, then the funds may be deemed to be held in trust, Scott, Trusts (3d ed.) § 24, at 192. *Andrew* v. *Union Sav. Bank & Trust Co.* 220 Iowa 712, 715. Comment, Payments of Interest on Mortgage Escrow Accounts: Judicial and Legislative Developments, 23 Syracuse L. Rev. 845, 852.

Whether a trust was created depends upon the intention of the parties "manifested by their words and conduct and the end to be accomplished." *Povey* v. *Colonial Beacon Oil Co.* 294 Mass. 86, 90. The bill does not set forth the specific terms of the mortgage and loan agreements, and there is no allegation that the agreements contain the term "trust," but the fact that the word "trust" may not have been used is not determinative since "the existence of a trust does not depend upon the terminology used." *Gordon* v. *Gordon*, 332 Mass. 193, 195. *Robinson* v. *Cogswell*, 192 Mass. 79, 84. *Rugo* v. *Rugo*, 325 Mass. 612, 616.

It has been said that "[w]here the owner of property transfers it to another with a direction to transfer it to . . . a third person, this may be a sufficient manifestation of an intention to create a trust." Scott, Trusts (3d ed.) § 24, at 192.

In *Andrew* v. *Union Sav. Bank & Trust Co.* 220 Iowa 712, 715, the court stated that when money was left with the bank for the payment of a debt to a designated person: "[T]he money does not become the property of the bank. The fund is merely intrusted to the bank as a trustee or bailee without any authority on the part of the bank to use it as its own."

The Court of Appeals for the Second Circuit has stated: "There are certain principles we regard as established: . . . Every person who receives money to be paid to another, or to be applied to a particular purpose, to which he does not apply it, is a trustee, and may be sued either at law for money had and received, or in equity as a

trustee, for a breach of trust. *Taylor* v. *Benham,* 5 How. 233, 274, 12 L. Ed. 130; *Kane* v. *Bloodgood,* 7 Johns. Ch. (N. Y.) 110, 11 Am. Dec. 417." *In re Interborough Consol. Corp.* 288 Fed. 334, 347 (2d Cir.).

In *Hooper* v. *Mayo,* 298 Mass. 411, the defendant agreed to hold the sum of $3,000 for the stated purpose of protecting himself from any tax liability and other incidental expenses connected therewith. We held that "[t]he agreement created a fiduciary relation which entitled the plaintiff to an accounting in her bill in equity." P. 413.

We think that the bill properly puts in issue the creation of a trust. The corpus of the alleged trust is identified. See *Howard* v. *Fay,* 138 Mass. 104, 106. The allegations set out with sufficient precision the facts of the defendant's undertaking and the circumstances of the particular transaction. See *Vogelaar* v. *H. L. Robbins & Co. Inc.* 348 Mass. 787, 788. There is nothing in the plaintiffs' allegations that necessarily precludes a fiduciary relationship and there are sufficient allegations that could lead to a finding that the tax instalments were impressed with a trust. The bank, which has not disputed the alleged obligation of the mortgage and loan agreements, could be held to have assumed the role of a fiduciary over the trust. If the defendant, as a fiduciary, invested the tax payments and accumulated a profit thereon, which the defendant's demurrer is considered to admit (*Harrison* v. *Commissioner of Corps. & Taxn.* 272 Mass. 422, 424) then an accounting, as prayed for by the plaintiffs, would be an appropriate form of relief to determine what, if anything, is due the plaintiffs. *Knowlton* v. *Fourth-Atlantic Natl. Bank,* 271 Mass. 343, 350. *Hooper* v. *Mayo,* 298 Mass. 411, 414. *Levy* v. *Levy,* 309 Mass. 486, 490.[4]

---

[4] Of significance is admission by counsel for the defendant during oral argument that such tax deposits would not be reachable by general creditors of the bank. It has been held that where moneys are paid to a bank for payment of property taxes and the bank later becomes insolvent, the tax moneys so held are given the preference of a trust in insolvency proceedings. *Winkler* v. *Veigel,* 176 Minn. 384, 387–388. *Matzen* v. *Johnson,* 127 Kans. 139.

The defendant's characterization of the plaintiffs' request for relief as a demand *for interest* on the tax payments is inaccurate. The plaintiffs have alleged that the bank has accumulated profits on the invested tax payments, which the bank has not denied. It is an accounting of these profits that the plaintiffs seek and not the payment of a fixed rate of interest. Their argument that a decision requiring an accounting would interfere with the statutory powers of the Commissioner of Banks to regulate payment of interest is irrelevant.

The brief of the Savings Banks Association of Massachusetts, submitted as amicus curiae, relies 'upon *Goldman* v. *Worcester*, 236 Mass. 319, to support the contention that the defendant is under no obligation to return interest on the tax payments to the plaintiffs. Such reliance is misplaced. In the *Goldman* case, *supra*, which is clearly distinguishable, the defendant city was permitted to retain the accrued interest on its *own funds* allegedly due to the plaintiff. There we ruled that because the terms of the contract between the plaintiff and the defendant permitted the city to retain a portion of its payments for the plaintiff's work during the pendency of a bill in equity, the plaintiff had no right to claim any interest on the *city's* retained funds. In the instant case the *defendant* is admittedly not the source of the tax payments in question.

Similarly the defendant's reliance upon *Ratner* v. *Hill*, 270 Mass. 249, is also misplaced. The *Ratner* case, *supra*, involved a two-party purchase and sale agreement. We held that where such an agreement required tender of a deed conveyed "free from all encumbrances, 'except a mortgage in the amount of thirty thousand ($30,000) dollars' " tender of a deed purporting to convey land subject to a mortgage requiring the payment of interest at six per cent per annum was not a sufficient tender under the agreement. The case before us involves a three-party arrangement where the plaintiffs pay tax moneys to the bank which is obliged to pay over the moneys, when due, to the taxing municipality. Such an arrangement is

clearly distinguishable from the *Ratner* case, *supra.*

The amicus brief of the Savings Banks Association of Massachusetts places a great reliance on *Sears* v. *First Fed. Sav. & Loan Assn.* 1 Ill. App. 3d 621 (1st Dist.). But the case is clearly distinguishable. In the *Sears* case, *supra,* the plaintiff was a mortgagor paying monthly tax assessments to the mortgagee bank, which in turn was obligated to satisfy the tax debts on the mortgaged property as they became due. The plaintiff filed a complaint, individually and on behalf of all mortgage borrowers from the defendant, alleging that the moneys paid to the defendant constituted a trust and that any earnings should inure to the benefit of the class. The court affirmed the dismissal of the complaint.

The language of the promissory note securing the mortgage loan in the *Sears* case permitted the bank to choose one of three optional methods of dealing with the tax payments: "It is agreed that all such payments may, at the option of the Association (1) be held in trust by it without earnings for the payment of such items [current year's tax obligation]; (2) be carried in a borrower's tax and insurance account and withdrawn by the Association to pay such items; or (3) be credited to the unpaid balance of said indebtedness as received, provided that the Association advances upon this obligation sums sufficient to pay said items as the same accrue and become payable." 1 Ill. App. 3d at 625. It was alleged that the defendant had exercised the second option.

In the *Sears* case, the court made it quite clear that its decision rested upon the specific language of the note in question: "the controversy centers about certain language in the note," *supra,* at 625; "[w]e must arrive at the meaning of the second option from an examination of the language used in the document," *supra,* at 627.

It is also clear that the court in the *Sears* case was "impressed with the argument . . . that since the first option, which uses the term 'trust', provides specifically that the payment is to be, 'without earnings', it should follow that, if . . . the second option were to be deemed

a trust, it should partake of the same attribute expressed with reference to option one and be carried without earnings." 1 Ill. App. 3d at 629. These options are nonexistent on the record before us. The holding in the *Sears* case, *supra,* must, therefore, be read in the light of the particular language of the note there in question and is not controlling in the instant case.

The defendant argues that the mere fact that it is a bank does not establish a fiduciary relationship. This is true. But it is equally true that the mere fact that the defendant is a bank does not preclude a fiduciary relationship where the facts indicate a trust relationship between the parties. More specifically, it would be difficult to argue with any degree of logic that no trust could be found to exist where money passes from A to B for the specific purpose of being turned over by B to C to pay off an obligation owed by A to C. In demurring to the bill this is essentially the position of the defendant. The fact that B is a bank and not an individual is not decisive. At a trial on the merits, however, this factor, among others, may be considered in making a judicial determination on all the evidence whether a trust was in fact established.

We conclude that the plaintiffs' bill alleges sufficient facts to state a cause of action, which if proved, requires an accounting between the parties of profits, if any, realized by the bank on the tax payments held in trust by the bank. Our holding, limited to the present record, is simply that there are sufficient averments in the plaintiffs' bill to state a cause of action. The interlocutory and final decrees are reversed. The case is remanded to the Superior Court for the entry of an interlocutory decree overruling the demurrer and further proceedings consistent with this opinion.

*So ordered.*