539 P.2d 958

**Charles R. BROOKS, Appellant,**

**v.**

**The VALLEY NATIONAL BANK, a corporation, Appellee.**

**No. I CA–CIV 2481.**

Court of Appeals of Arizona,
Division 1,
Department B.

Sept. 9, 1975.

Rehearing Denied Oct. 10, 1975.

Review Granted Nov. 18, 1975.

Yankee & Bernstein, by James A. Yankee, Phoenix, for appellant.

Snell & Wilmer, by George H. Lyons and John J. Bouma, Phoenix, for appellee.

## OPINION

JACOBSON, Presiding Judge.

Was a cause of action stated against a collector of mortgage payments to account for profits derived by the collector in investing moneys received from periodic payments for taxes and insurance? This is the sole question presented on this appeal.

Appellant, Charles R. Brooks, brought an action on behalf of himself and others similarly situated [1] against the appellee, Valley National Bank (Bank), seeking a declaratory judgment and an accounting for alleged profits earned by the Bank from investments of monies received from Brooks in payment of his obligations for insurance and taxes, which monies were received along with the monthly obligation covering interest and principal and as part of the monthly payment.

The Bank moved to dismiss the complaint, supporting its motion with affidavits. The trial court treated the motion as one for summary judgment and granted it. Brooks has appealed the dismissal of his complaint.

The operative facts are not in dispute. On May 2, 1958, Walter J. Gray and Alva M. Gray entered into a mortgage contract with the Bank, a national banking association regulated by the Federal Reserve Board, whereby they became obligated to pay to the Bank monthly payments covering interest and principal on their primary obligation, plus $\frac{1}{12}$ of the estimated real estate taxes, insurance and ground rents. The mortgage in this regard states:

> "The mortgagor will pay to the mortgagee . . . a sum equal to the ground rents, if any, next due, plus the premiums that will next become due and payable on policies of fire and other hazard insurance . . . plus taxes and assessments next due . . . such sums to be held by mortgagee in trust to pay said ground rents, premiums, taxes and special assessments."

That portion of the monthly payment relating to taxes, insurance and ground rents is generally referred to as "impounds". On May 24, 1958, Brooks assumed the Gray mortgage.

On December 10, 1958, the Bank assigned the Gray mortgage to the Dollar Savings Bank of New York, and at the time this action was commenced, the Bank was only the servicing agent for this mortgage. There is no contention, however, that because of this servicing agent status the Bank has not received or used the impounds under this mortgage. In fact, such impounds are deposited by the Bank's real estate department in the Bank's demand deposits account where they are available for the general investment policies of the Bank. The Bank in turn, pays the tax bills and insurance premiums, semi-annually as to taxes, and either every two or three years as to insurance.

Brooks contends that his complaint states a valid cause of action, at least so as to survive a motion to dismiss, on two theories:

(1) That a trust relationship exists between himself and the Bank in regards to impounds and that the Bank breached its fiduciary duty as trustee by using the res of the trust (the impounds) for its own

---

1. The issue of the propriety of the class action aspects of this litigation is not before us on this appeal.

benefit and not for the benefit of its beneficiary, Brooks, and

(2) that the Bank has become unjustly enriched to the extent that it has benefited from use of the impound funds.

Brooks's first contention is that because the mortgage document refers to the impounds being held by the Bank "in trust" for the payment of taxes and insurance (ground rents are not present in this case), a trust relationship was created between the mortgagor and the mortgagee, with the Bank as trustee, and that the legal duties flowing from this relationship attached to the Bank's use of the impound funds.

The issue of whether a mortgagee's obtaining impound funds in connection with monthly mortgage payments creates a trust relationship as to those funds has been the subject of increased litigation in the recent past. The leading case upholding the trust theory is *Carpenter v. Suffolk Franklin Savings Bank*, Mass., 291 N.E.2d 609 (1973). In Carpenter, as here, the matter came to the Massachusetts Supreme Judicial Court based on a motion to dismiss without an evidentiary hearing. Moreover, the Massachusetts appellate court did not have before it the mortgage document which it was alleged created the trust agreement and thus was limited to a determination of whether, if true, the allegations of the mortgagor's complaint stated a cause of action. Among the allegations of the complaint was an averment that the mortgagee bank held the impound funds "as escrowee". The *Carpenter* court held that such an allegation:

". . . puts in issue the creation of a trust. The corpus of the alleged trust is identified. [citation omitted]. . . . There is nothing in the plaintiffs' allegation that necessarily precludes a fiduciary relationship and there are sufficient allegations that could lead to a finding that the tax instalments were impressed with a trust. The bank, which has not disputed the alleged obligation of the mortgage and loan agreements, could be held to have assumed the role of a fiduciary over the trust. If the defendant, as a fiduciary, invested the tax payments and accumulated a profit thereon, which the defendant's demurrer is considered to admit [citation omitted] then an accounting, as prayed for by the plaintiffs, would be an appropriate form of relief to determine what, if anything, is due the plaintiffs. [citations omitted]." 291 N.E.2d at 615.

However, the *Carpenter* court was quick to point out that "whether a trust was created depends upon the intention of the parties 'manifested by their words and conduct and the end to be accomplished'," 291 N.E.2d at 614 and that their holding "limited to the present record, is simply that there are sufficient averments in the plaintiff's bill to state a cause of action." 291 N.E.2d at 616.

A like result has been reached in Pennsylvania, *Buchanan v. Brentwood Federal Savings & Loan Ass'n.*, 457 Pa. 135, 320 A.2d 117 (1974) and in California, *Abrams v. Crocker–Citizens National Bank,* 41 Cal.App.3d 55, 114 Cal.Rptr. 913 (1974). It is interesting to note that the mortgage in *Abrams* contained language that impounds were held "in trust", and that both cases reached the appellate court without evidentiary hearings on the trust issue.

On the other hand, contrary authority exists. In *Surrey Strathmore Corp. v. Dollar Savings Bank*, 36 N.Y.2d 173, 325 N.E.2d 527 (1975) the New York Court of Appeals had before it a mortgage which stated that impounds were held "in trust" and the mortgagor sought to establish its right to the income, if any, received by the mortgagee with respect to the monies paid as impounds. Again, the matter came to the appellate court without an evidentiary hearing. The court, after stating that the words "in trust" did not afford any conclusionary grounds as to the true status of the parties' relationship, stated:

"We observe that the written expression of the agreement of the parties contains no explicit provision, one way or the other, with respect to payment of in-

terest or earnings on the tax payments. The payment of interest or earnings was not indispensable to effectuate the objectives of the mortgage agreement and there is no other provision of the written instrument from which it may be inferred that the parties intended that there be payment of interest or earnings. Indeed, from the parties' silence the inference may be drawn that no such payment was intended. . . . There being no express agreement of the parties and no predicate for any inference that such an agreement was intended, we conclude that this mortgagor is not entitled to the relief it now seeks." 325 N.E.2d at 529–30.

In accord with the holding of the New York Court, *see Manchester Gardens, Inc. v. Great West Life Assur. Co.*, 92 U.S. App.D.C. 320, 205 F.2d 872 (1953); *Durkee v. Franklin Savings Ass'n.*, 17 Ill.App. 3d 978, 309 N.E.2d 118 (1974); *Zelickman v. Bell Fed. Sav. & Loan Ass'n.*, 13 Ill. App.3d 578, 301 N.E.2d 47 (1973); *Sears v. First Fed. Savings & Loan Ass'n.*, 1 Ill. App.3d 621, 275 N.E.2d 300 (1971); *Yudkin v. Avery Fed. Sav. & Loan Ass'n.*, 507 S.W.2d 689 (Ky.1974). While the cases from Illinois can possibly be distinguished based upon the particular language of the mortgages involved and the Kentucky case can be distinguished based on the relief prayed for, we are of the opinion that all jurisdictions which have considered this problem, reaching either pro or con conclusions, have relied primarily upon the same underlying legal principals in reaching their respective conclusions.

 In our opinion, these agreed upon principles are:

(1) That the presence or absence of words such as "in trust", "trustee" or "beneficiary" do not necessarily manifest an intent to create a trust relationship. *State v. Coerver*, 100 Ariz. 135, 412 P.2d 259 (1966). *Surrey Strathmore Corp. v. Dollar Savings Bank, supra.*

(2) Whether a trust is created depends upon the intention of the parties to be ascertained from their words, and conduct in light of the surrounding circumstances. *Abrams v. Crocker-Citizens National Bank, supra; Carpenter v. Suffolk Franklin Savings Bank, supra.*

(3) A debt is not a trust. Restatement 2d., Trusts § 12.

(4) In establishing a trust there must be a res or specific property that forms the subject matter of the trust. *Sears v. First Federal Savings & Loan Ass'n., supra*; Bogert, Trust and Trustees, § 111 (2nd Ed. 1964).

 As can be seen, the primary inquiry surrounding the issue of whether a trust relationship is created as to impounds or whether a mere debtor-creditor relationship was intended, centers on the intent of the parties at the time the mortgage document was executed. In making this inquiry, an analysis first must be applied to the written document of the parties. In this regard, the mortgage in this case provides:

". . . the mortgagor, in order more fully to protect the security of this mortgage, covenants and agrees as follows:

\* \* \* \* \* \*

"2. That, together with, and in addition to, the monthly payments of principal and interest payable under the terms of this note secured hereby the mortgagor will pay to the mortgagee, on the 1st day of each month until the said note is fully paid, the following sums:

"(a) [1/12th of the annual mortgage insurance premium required by the National Housing Act, if the note is secured under the provisions of that act.]

"(b) A sum equal to [1/12 of hazard insurance premiums and taxes due], such sums to be held by mortgagor in trust to pay said . . . premiums [and] taxes . . . .."

"(c) All payments mentioned in the two preceding subsections of this paragraph and all payments to be made under the note secured hereby shall be added together and the aggregate amount thereof shall be paid by the mortgagor each month in a single payment to be applied by mortgagee to the following item in the order set forth:

"(I) Premium charges under contract of insurance with the Federal Housing Commissioner.

"(II) Ground rents, taxes, special assessments, fire and other hazard insurance premiums [the impounds involved here],

"(III) interest on the note secured hereby; and

"(IV) Amortization of the principal of said note."

The mortgage further provides that failure to pay the amount set forth for impounds "constitutes an event of default under this mortgage." Moreover, the mortgage contract provides that in the event that the amount received as impound exceeds the actual amount of taxes and insurance premiums, "such excess shall be credited by the mortgagee on subsequent payments to be made by the mortgagor." However, if the impounds are insufficient to pay taxes and insurance premiums "then the mortgagor shall pay to the mortgagee an amount necessary to make up the deficiency."

The mortgage further provides that in the event the mortgagor tenders full payment of the principal debt and interest to the mortgagee, any funds accumulated as impounds shall be credited to the mortgagor.

Looking at the cold language of the document in question it appears that the intent of the parties was that payment of impounds was made "in order more fully to protect the security of this mortgage." Consistent with this intent is the provision that failure to pay impounds will "consti-

tute an event of default under this mortgage," leading to foreclosure of the security. It would appear that this right to foreclose upon failure to pay impounds is more compatible with a debtor-creditor relationship than will a trustee-beneficiary relationship. The mortgage also provides that these impounds in addition to being used for the payment of taxes and insurance premiums can, under certain circumstances, be used to reduce the principal indebtness of the mortgagor. Again, this provision is inconsistent with the theory that a special res of the trust was intended to be created for the purpose of paying debts due third parties. Finally, the mortgage document provides that a lump aggregate sum is to be paid by the mortgagor and the mortgagee is given authority to allocate this single sum among various items in a descending order of priority. Such authorization is normally not afforded a trustee, because the exercise of such authority could theoretically, if the amount received was insufficient to cover all items to which payment is allocated, cause a foreclosure and thus destruction of the res of the trust.

Admittedly, that portion of the payment received by the mortgagee as impounds was intended by the parties to be used primarily for a given purpose, that is, the payment of taxes on the premises used as security for the loan and the payment of insurance premiums, insuring the premises. Does this intent to use these funds for a specific purpose create a trust relationship between the parties?

The only language in the document which could be construed as an intent to create such a trust relationship is that the mortgagee shall hold the impound "in trust." However, when we consider the conduct of the parties herein, as that conduct can be construed to relate to their intent, the mortgagee has specifically negated such an intent by its affidavit in support of the motion for summary judgment. On the mortgagor's part, Brooks's predecessor in interest for a period of

more than ten years, acquiesced in the mortgagee using these funds in a manner inconsistent with a trust relationship.

Looking, then, to both the written words and the conduct of the parties, we find no factual dispute that the parties did not intend the use of the words "in trust" to create a trust relationship as to impounds. Rather, we are of the opinion, again from the language of the mortgage and from the parties' conduct, that the intent of the parties was that the Bank became contractually obligated to make the payment of taxes and insurance due on the mortgaged premises to the extent that the borrower made monies available to make such payment. To express this intent, they used the words "in trust". *Sears v. First Federal Savings & Loan Ass'n., supra.* This did not create a trust relationship, but merely a debtor-creditor relationship with the creditor contractually bound to use a portion of the funds received for a specific purpose. We so hold.

■ For this reason, we reject, as did the trial court, the Bank's contention that the funds received by way of impounds were "demand deposits" and by reason of regulation of the Federal Reserve Board it was prohibited from paying interest thereon. We reject this argument for two reasons. First, we do not believe that the impounds here fall within the definition of "demand deposits" as that term is used in § 371a Title 12, of the United States Code, prohibiting a national bank from paying "directly or indirectly, by any device whatsoever . . . any interest on any deposit which is payable on demand." *Abrams v. Crocker-Citizen National Bank, supra.* Second and more importantly, we agree with the conclusion reached in *Sears v. First Federal Savings & Loan Ass'n., supra*:

"Upon consideration of all the above circumstances, we conclude that the monthly sums paid to [the Bank] are not deposits in any legal sense of that term but are simply payments by a debtor upon amounts due to the creditor." 1 Ill.App.3d at 628, 275 N.E.2d at 304.

■ We turn now to Brook's argument that his complaint validly stated a cause of action for "unjust enrichment". It is generally held that unjust enrichment occurs when one person has money which in justice and equity belongs to another. 66 Am.Jur.2d Restitution and Implied Contracts, § 3, pg. 945. Therefore, in order for Brooks to have stated a valid cause of action against the Bank for unjust enrichment it was incumbent upon him to show that the impounds "belonged" to him. Our previous discussion dealing with the trust argument negates such an ownership interest in the impounds. We have held that the payment made by Brooks to the bank, including the amount for impounds, is in satisfaction of a debtor-creditor relationship created by the mortgage document. In satisfaction of that relationship, Brooks retains no more ownership in the funds paid as impound than he does in the principal and interest due the Bank. What does "belong" to Brooks is a cause of action against the Bank to require it to perform its contractual obligation by paying taxes and insurance to third parties to the extent that Brooks has made funds available for this purpose.

We therefore hold that payment of monthly installments to the Bank, which installments include monies for taxes and insurance are in satisfaction of a debtor-creditor relationship and upon receipt of these funds, title passes to the Bank with the corresponding contractual obligation to apply these funds in accordance with that contract.

For the foregoing reasons, the judgment of the trial court is affirmed.

EUBANK, J., and HAIRE, C. J., Division 1, concurring.