JOHN WARREN CARPENTER & others *vs.* SUFFOLK FRANKLIN SAVINGS BANK & others.

Suffolk.    March 2, 1976. — May 13, 1976.

Present: HENNESSEY, C.J., REARDON, QUIRICO, BRAUCHER, & KAPLAN, JJ.

*Practice, Civil,* Class action. *Mortgage,* Of real estate, Profits on tax payments. *Escrow. Trust,* What constitutes. *Interest. Bank and Banking.*

In an action seeking an accounting of investment profits realized by one bank on tax payments made by mortgagors, the judge did not

abuse his discretion in refusing to certify a multibank class action, where the plaintiffs asserted personal rights against only the defendant bank, where the numbers of potential class members and the likelihood of widely varying loan documents would have rendered the class action unmanageable, and where alternative procedural devices were available. [316-320]

In an action seeking an accounting of investment profits realized by a bank on tax payments made by mortgagors, even though the judge might preferably have certified a class action on behalf of all the mortgagors of the defendant bank, his refusal to do so was not reversible error where no claims were dismissed and where the plaintiffs in a "test case," promptly reported for appellate review, did not prevail on the merits. [320-322]

Where a bank's written mortgage agreements customarily required mortgagors to pay the bank each month one-twelfth of the estimated annual real estate taxes on the mortgaged property, with the taxes then being paid annually by the bank, and were silent as to the investment of the tax payments, the retention of earnings, or the intention to create a trust, neither express nor resulting trusts were created by the agreements. [322-326]

In the circumstances, a bank which required in its written mortgage agreement that mortgagors pay the bank each month one-twelfth of the estimated annual real estate taxes on the mortgaged property and then annually paid the taxes was not so unjustly enriched by the payments as to mandate the imposition of a constructive trust. [326-327]

BILL IN EQUITY filed in the Superior Court on September 17, 1970.

The suit was heard by *Lynch,* J., and questions of law were reported by him to the Appeals Court. The Supreme Judicial Court granted a request for direct review.

*Edward J. Barshak, Lawrence D. Shubow & Herbert H. Hershfang (George S. Abrams* with them) for the plaintiffs.

*Marshal Simonds* for Suffolk Franklin Savings Bank & others.

*David W. Walker* for Arlington Five Cents Savings Bank & others.

*Stanley V. Ragalevsky* for Merchants Co-operative Bank & others.

*Franklin N. Cunningham* for Dorchester Savings Bank & others.

*William S. Monahan* for The Boston Five Cents Savings Bank & others.

BRAUCHER, J. The Carpenters and the Kayes (the plaintiffs) are mortgagors of real property in Boston to the defendant Suffolk Franklin Savings Bank (Suffolk Franklin). They made payments to Suffolk Franklin, as mortgagee, on account of municipal real estate taxes, and seek an accounting of investment profits realized by Suffolk Franklin on the tax payments. In *Carpenter* v. *Suffolk Franklin Sav. Bank,* 362 Mass. 770 (1973) (*Carpenter I*), we held that a cause of action was stated. On remand, a judge of the Superior Court denied the plaintiffs' motions to certify the action as a class action and, after trial without a jury on liability issues only, made findings of fact and conclusions of law adverse to the plaintiffs' claims against Suffolk Franklin. On report pursuant to Mass. R. Civ. P. 64, 365 Mass. 831 (1974), we hold that there was no reversible error.

On September 17, 1970, the plaintiffs filed a bill in equity and petition for declaratory judgment against Suffolk Franklin. A Superior Court judge sustained the defendant's demurrer and dismissed the bill, and in *Carpenter I* we reversed. Thereafter the plaintiffs amended the bill to allege that they represented all Massachusetts real estate owners who as mortgagors had made monthly tax escrow payments during the six preceding years to any of the 325 other savings banks and cooperative banks in the Commonwealth, and to add each such bank as a defendant. On March 21, 1974, the judge denied the plaintiffs' motion to certify such a multibank action as a class action, but gave them leave to present a motion to certify a more limited action on behalf of mortgagors to Suffolk Franklin. Such a motion was denied on August 14, 1974. A trial on the merits of the plaintiffs' claims against Suffolk Franklin was held, restricted to the issue of liability, and the judge made findings of fact and conclusions of law pursuant to Mass. R. Civ. P. 52 (a), 365 Mass. 816 (1974), and reported the case to the Appeals Court. We allowed the plaintiffs' application for direct appellate review.

1. *The multibank class action.* The judge has reported to us the question whether his interlocutory orders denying

the motions to certify the action as a class action were correct or incorrect and, if incorrect, whether they constitute reversible error. We consider the two orders separately. We did not address any class action issues in *Carpenter I.*

In their motion to certify the multibank class action, the plaintiffs sought to represent mortgagors of both residential and nonresidential real estate in Massachusetts, excluding any mortgagor whose estimated tax payments were certified by the mortgagee bank to be pursuant to a written agreement explicitly authorizing the bank to invest the payments, to retain the proceeds, and to be free of any duty to account for them. Although the motion was denied in March, 1974, the judge took into account Mass. R. Civ. P. 23, 365 Mass. 767, effective July 1, 1974, as well as such prior decisions as *Spear* v. *H.V. Greene Co.,* 246 Mass. 259 (1923). He noted that the plaintiffs asserted personal rights against only Suffolk Franklin, and alleged no conspiracy or concerted action among the defendant banks. He ruled that the plaintiffs could not represent potential class members having claims against defendants against whom the plaintiffs asserted no claim. He further stated that the proposed class action possibly involved more than a million mortgagors as plaintiffs and 326 banks as defendants, that there probably were factual and legal variations among the claims, and that alternative procedural devices were available. Hence, he ruled, the action was simply unmanageable.

We agree, for the most part on the grounds given by the judge. Although our rule 23, unlike the corresponding Federal rule, does not provide for a motion to certify that an action may proceed as a class action, such motions are often necessary and desirable for the efficient handling of class actions, and it was properly within the judge's discretion to make preliminary rulings on the class action issues. *Baldassari* v. *Public Fin. Trust,* 369 Mass. 33, 39 (1975). So far as the *Spear* case required that the members of the class suffer a "joint wrong," it imposed a more restrictive standard than our rule 23. The purpose of the 1966 amendment to the Federal rule was to enlarge the scope of the

class action device, and our rule 23, though written in light of the Federal rule, omitted some of the restrictions in the Federal rule. *Id.* at 40. The plaintiffs do not object to the judge's use of rule 23 before it took effect.

A number of Federal cases have denied certification where the plaintiff has a claim against one defendant only and seeks to represent those having similar claims against other unrelated defendants. *La Mar* v. *H & B Novelty & Loan Co.*, 489 F.2d 461, 462 (9th Cir. 1973). *Kauffman* v. *Dreyfus Fund, Inc.*, 434 F.2d 727, 734 (3d Cir. 1970), cert. denied, 401 U.S. 974 (1971). *Weiner* v. *Bank of King of Prussia*, 358 F. Supp. 684, 690 (E.D. Pa. 1973). Contra, *Haas* v. *Pittsburgh Nat'l Bank*, 60 F.R.D. 604, 611-614 (W.D. Pa. 1973); *Samuel* v. *University of Pittsburgh*, 56 F.R.D. 435, 438-440 (W.D. Pa. 1972). Such decisions have been "plagued by the problem of 'standing' arising from the federal constitutional provision restricting the judicial power to actual cases and controversies." State courts need not become enmeshed in the Federal complexities and technicalities and are free to reject procedural frustrations in favor of just and expeditious determinations on the ultimate merits. See *Kronisch* v. *Howard Sav. Institution*, 133 N.J. Super. 124, 137-138 (1975). In the *Kronisch* case and in *Buchanan* v. *Brentwood Fed. Sav. & Loan Ass'n*, 457 Pa. 135, 160 (1974), multibank class actions like the present one were allowed to continue. Contrary rulings in *Graybeal* v. *American Sav. & Loan Ass'n*, 59 F.R.D. 7, 18 (D.D.C. 1973), and *Cale* v. *American Nat'l Bank*, 37 Ohio Misc. 56, 58-59 (1973), rest on the Federal "standing" cases.

Under our rule 23 the class must be "numerous," there must be common questions of law or fact, the claims of the representative parties must be "typical," and those parties must "fairly and adequately protect the interests of the class." In addition, the common questions must "predominate" over individual questions, and the class action must be "superior" to other available methods for fair and efficient adjudication. Apart from any technical requirement of "standing," the proposed multibank class action raised

questions of typicality, of fair and adequate protection, and of predominance and superiority. The predominance and superiority requirements introduce a highly discretionary element. See *Baldassari* v. *Public Fin. Trust,* 369 Mass. 33, 40 (1975).

The judge thought it probable that, if the multibank class were certified, he would nevertheless have to try many mortgagors' cases separately in order to determine whether their individual agreements had established a trust relationship with the mortgagee bank. The effect of each agreement, he said, depended on the language of the loan documents — mortgage deed, note, often a mortgage application, a commitment letter, and related papers. Such documents might vary widely in their effect. Not all of the writings contained identical or even similar language. In addition to varying written formulations, the conduct of the parties might furnish evidence of intention. The judge also took account of alternative procedural devices and methods, "ranging from use of a model [or test] action to consolidation or coordination of the numerous individual actions for all or selected purposes," quoting Kaplan, Continuing Work of the Civil Committee: 1966 Amendments of the Federal Rules of Civil Procedure (I), 81 Harv. L. Rev. 356, 391 (1967).

In these circumstances there was no abuse of discretion in the refusal to certify the multibank class action. In *Buchanan* v. *Brentwood Fed. Sav. & Loan Ass'n,* 457 Pa. 135, 160 (1974), the court insisted that a class be limited to mortgagors whose documents contained tax payment clauses that did not differ materially, and in *Kronisch* v. *Howard Sav. Institution,* 133 N.J. Super. 124, 131 (1975), the class approved included only mortgagors whose mortgages, guaranteed under Federal programs, contained identical language. Cf. *Umdenstock* v. *American Mortgage & Inv. Co.,* 363 F. Supp. 1375, 1379 (W.D. Okla. 1973), aff'd in part and rev'd in part, 495 F.2d 589 (10th Cir. 1974).

We are not insensitive to countervailing considerations. The judge found the plaintiffs' claims fairly typical of the claims of other mortgagors of residential property to Suf-

folk Franklin, and estimated the probable gross yield on investment of the tax payments on each mortgage at $10 to $15 a year; "by allowing aggregation of numerous small claims in one action, class actions provide a judicial vehicle for redress which, were separate actions required, would not be financially feasible." J.W. Smith & H.B. Zobel, Rules Practice § 23.1 (1975). But a class judgment against Suffolk Franklin alone might put it at a serious competitive disadvantage as compared with other savings banks, cooperative banks, and other lenders, and thus might unfairly discriminate against its depositors. The multibank class action would avoid these disadvantages and would facilitate evenhanded application of the statute of limitations.

These considerations have lost much of their force, however, in the present posture of the case. We are upholding the judge's conclusions that there was no trust relationship between the plaintiffs and Suffolk Franklin and that no resulting or constructive trust should be imposed. This might not prevent the plaintiffs from continuing to represent the class. Cf. *Wolf* v. *Commissioner of Pub. Welfare,* 367 Mass. 293, 300 (1975). But the substantive problem is resolved for the future by G. L. c. 183, § 61, inserted by St. 1973, c. 299, § 1: effective July 1, 1975, interest on tax payments by residential mortgagors is to be "paid at least once a year at a rate and in a manner to be determined by the mortgagee." There remain only money claims by other mortgagors than the plaintiffs for periods before July 1, 1975.

2. *The one-bank class action.* Although the plaintiffs' motion to certify as a class action an action on behalf of Suffolk Franklin mortgagors was heard before July 1, 1974, the judge denied it after that date and applied our rule 23. He found that the proposed class was sufficiently "numerous," that there were common questions of law or fact, that the plaintiffs' claims were fairly "typical" of the claims of mortgagors of residential property but not of the claims of mortgagors of commercial property, and that the plaintiffs would fairly and adequately protect the interests of a class

of residential mortgagors. He concluded, however, that the requirements of "predominance" and "superiority" were not met.

The judge read our *Carpenter I* opinion as requiring consideration, not merely of standardized writings, but also of the individual conduct of the parties to each mortgage and of any further individual circumstances bearing on their intent. Such evidence, he thought, would tend to overwhelm any common questions of law or fact. For that reason and because of possible issues as to defenses and damages, he also foresaw complexities in the giving of notice to members of the class, in the taking of depositions and the use of interrogatories and requests to admit facts, and in the conduct of one massive trial or a multitude of mini-trials. He concluded that greater efficiency, expedition and fairness would result from processing the plaintiffs' case as a test or pilot case, with prompt appellate review.

He therefore announced that he would try the claims of the Carpenters and the Kayes on the merits of the issue of liability, and would then report for appellate review the class action issues and his findings of fact and rulings of law on the liability issue. After trial he denied a request for reconsideration of the certification of a one-bank class action, and made the report now before us.

Refusal to certify the one-bank class action seems to us unsatisfactory. It seems likely that this case involves several thousand mortgagors who made contracts with the same bank containing identical clauses, pursuant to the same statutes and in accordance with the same long-standing custom and practice. Of course the parties to a particular mortgage were free to make different contracts from the usual ones, and some perhaps did. But we are not to be understood as acquiescing in a procedure which results in divergent adjudications on identical evidence in these circumstances by reason of the vagaries of different finders of fact.

The contracts involved here appear to be integrated agreements, subject to the parol evidence rule. See Restatement (Second) of Contracts §§ 235, 239 (Tent. Drafts

Nos. 1-7, 1973). The interpretation of such agreements ordinarily is a matter of law. *Robert Indus. Inc.* v. *Spence,* 362 Mass. 751, 755 (1973). A standardized agreement is interpreted wherever reasonable as treating alike all those similarly situated, without regard to their knowledge or understanding of the standard terms of the writing. Restatement (Second) of Contracts § 237 (2) (Tent. Drafts Nos. 1-7, 1973). If the tax payments of the plaintiffs to Suffolk Franklin were held to create trusts, other Suffolk Franklin mortgagors similarly situated might well be entitled to the benefit of the adjudication. Compare *Home Owners Fed. Sav. & Loan Ass'n,* v. *Northwestern Fire & Marine Ins. Co.,* 354 Mass. 448, 451-456 (1968), with Restatement (Second) of Judgments § 88 (Tent. Draft No. 2, 1975). Our opinion in *Carpenter I* is not to be understood in a contrary sense, since the written agreements were not then before us.

Nevertheless, we find no reversible error in the situation that has resulted. The judge refused to certify a one-bank class action, but he did not dismiss any claims. Even if a motion to certify is allowed, it may sometimes be appropriate to stay proceedings on all claims but one and to see whether disposition of that one may not settle the others. Cf. *Lumiansky* v. *Tessier,* 213 Mass. 182, 188 (1912). In *Katz* v. *Carte Blanche Corp.,* 496 F.2d 747, 758-762 (3d Cir.), cert. denied, 419 U.S. 885 (1974), the court reversed an order certifying a class action and directed the trial judge to consider the test case alternative. Here, as there, the defendants do not object to the procedure. See Comment, 88 Harv. L. Rev. 825, 832 (1975). After trial the plaintiffs in the present case fail on the merits, and much useless expense has been saved. If the claims of other members of the class are not abandoned, trial is likely to be limited to a showing that a claim is materially different from those of the plaintiffs. In short, the procedure followed has served its purpose well.

3. *The merits: trusts.* We summarize the judge's rulings on the issue of liability; we omit his findings as to undisclosed intentions and emphasize standard terms and prac-

tices. During the depression of the 1930's banks in Massachusetts lost large sums of money in mortgage foreclosures and often found that tax liens had priority over their mortgages. The practice developed of requiring payments of estimated taxes, and it has been the policy of Suffolk Franklin, in other than exceptional circumstances, to require all mortgagors to make such tax payments to it. The practice of Suffolk Franklin was in all respects in accord with the long-standing custom and practice of the savings bank industry in Massachusetts. The principal purpose was to provide additional security for mortgage loans, relieving the bank of the risk of a municipal tax lien superior in right to the mortgage.

The plaintiffs' mortgages were "upon the statutory condition," including the condition that the mortgagor pay all taxes when due. G. L. c. 183, § 20. Each note contained the same clause[1] requiring payment to the holder each month of one-twelfth of the annual real estate taxes as estimated by the holder. This clause was contained in a printed note form used by the bank and supplied by it to the attorney representing it at mortgage closings. The attorney was not authorized to waive the requirement; mortgage loan officers were, if there was a favorable ratio between the loan and the value of the real estate. It was the bank's policy not to notify the mortgagor that the requirement could be waived.

The bank fully disclosed the nature and extent of the requirement and practiced no fraud or concealment, and the mortgage transactions were in all respects fair and reasonable in the circumstances. The requirement of real estate tax payments did not affect the rate of interest. The plaintiffs paid the bank with monthly checks, each check including the tax payment and the instalment of principal

---

[1] "The makers agree to pay to the holder hereof with each monthly payment of interest one-twelfth of the real estate taxes and betterment assessments, as estimated by the holder hereof, annually assessed on the premises mortgaged to secure this note. All sums so paid shall be applied to or toward the payment of said taxes and any balance shall be accounted for annually to the owner of said premises."

and interest, and the bank made tax payments to the city of Boston, usually in October, equal to or greater than the plaintiffs' tax payments. Monthly statements to the plaintiffs disclosed the amount of estimated tax payment required, designated "suspense" until 1966 and "escrow" thereafter; annual statements showed the accumulated amounts and the amount paid out.

The amounts of the tax payments were commingled with the bank's other funds and were available for investment; all or some were probably invested. The probable gross yield on each mortgage was $10 to $15 a year; the benefit to the bank was reduced by administrative expenses. The bank has not paid to the plaintiffs any of the return on such investment. The bank was paying something over four per cent on deposits, and sought to realize at least one per cent more from investments; and its net margin between return on investments and interest on deposits was in the vicinity of one per cent.

Both the Carpenters and the Kayes refinanced their mortgages, borrowing further amounts. In 1969 Kaye spoke to a bank employee about paying his taxes directly to the city, but the employee refused to act favorably on the suggestion. Otherwise none of the plaintiffs sought any alternative arrangements. In connection with some of the loans to the Kayes, the bank was required by G. L. c. 168, § 35, par. 4, to collect periodic tax payments. The payment of interest on the tax payments would not frustrate the bank's principal purpose in seeking such payments. The "capitalization method" of accounting for tax payments would not have been necessarily inconsistent with any purpose of the bank; under that method each instalment tax payment is treated as a payment of principal, and payment of the tax bill by the bank is treated as an increase of principal.

a. *Express trusts.* The judge concluded that there was no manifestation of intention to create a trust on the part of either the plaintiffs or the bank. The written agreements were silent as to investment of the tax payments, as to the retention of earnings, if any, and as to intention to create

a trust. The judge further concluded that the agreements established contractual relationships, not trusts, that the tax payments constituted general deposits for a special purpose, creating debtor-creditor relationships, rather than special deposits creating fiduciary relationships, and that the bank had the right to treat such payments as its own.

Borrowers, it is said, have brought hundreds of suits such as this one in the past several years, basing their claims on a variety of legal theories, including antitrust, truth in lending, fraud, unjust enrichment, breach of contract and breach of trust. See Notes, 54 B.U.L. Rev. 516, 517 (1974), 47 Temp. L.Q. 352 (1974), 28 Okla. L. Rev. 213 (1975). In a few cases, as in *Carpenter I*, a trust claim has been upheld as a matter of pleading. *Abrams* v. *Crocker-Citizens Nat'l Bank*, 41 Cal. App. 3d 55, 60 (1974). *Buchanan* v. *Brentwood Fed. Sav. & Loan Ass'n*, 457 Pa. 135, 143 (1974). In one case a small claims court awarded a plaintiff a judgment for $136, but the judgment was reversed on appeal. *Tierney* v. *Whitestone Sav. & Loan Ass'n*, 77 Misc. 2d 284 (Civ. Ct. 1974), rev'd, 83 Misc. 2d 855 (N.Y. Sup. Ct. 1975). In most of the reported cases the plaintiffs have been unsuccessful. *Gibson* v. *First Fed. Sav. & Loan Ass'n*, 504 F.2d 826, 830 (6th Cir. 1974) (Federal regulations). *Umdenstock* v. *American Mortgage & Inv. Co.*, 495 F.2d 589, 592 (10th Cir. 1974) (truth in lending). *Stavrides* v. *Mellon Nat'l Bank & Trust Co.*, 487 F.2d 953, 955 (3d Cir. 1973) (truth in lending). *Manchester Gardens, Inc.* v. *Great West Life Assurance Co.*, 205 F.2d 872, 876 (D.C. Cir. 1953) (claim for interest). *Kinee* v. *Abraham Lincoln Fed. Sav. & Loan Ass'n*, 365 F. Supp. 975, 978 (E.D. Pa. 1973) (Federal regulations). *Brooks* v. *Valley Nat'l Bank*, 24 Ariz. App. 484 (1975) (trust; unjust enrichment). *Tucker* v. *Pulaski Fed. Sav. & Loan Ass'n*, 252 Ark. 849, 858-859 (1972) (fiduciary). *Durkee* v. *Franklin Sav. Ass'n*, 17 Ill. App. 3d 978, 980-985 (1974) (trust). *Yudkin* v. *Avery Fed. Sav. & Loan Ass'n*, 507 S.W. 2d 689, 690 (Ky. App. 1974) (claim for interest). *Surrey Strathmore Corp.* v. *Dollar Sav. Bank*, 36 N.Y.2d 173, 177 (1975) (trust). *Cale* v. *American Nat'l Bank*, 37 Ohio Misc. 56

(1973) (trust; unjust enrichment). *Richman* v. *Security Sav. & Loan Ass'n,* 57 Wis. 2d 358, 362 (1973) (trust). As to residential mortgages in Massachusetts, the point is now settled by G. L. c. 183, § 61, effective July 1, 1975, requiring the payment of interest. The statute does not establish a trust or other fiduciary relationship, nor does it support an obligation to account for the fruits of investment, apart from the payment of interest.

In these circumstances the judge's findings are not clearly erroneous within the meaning of Mass. R. Civ. P. 52 (a), and his findings support his conclusions. A municipal lien for unpaid property taxes under G. L. c. 60, § 37, takes priority over a mortgagee's interest. See *Gaunt* v. *Arzoomanian,* 313 Mass. 38, 39 (1943). Under G. L. c. 167, § 58, the note or mortgage may require periodic payment of taxes, and amounts collected by a bank for payment of taxes may be invested in obligations legal for the bank; if the amount of the loan exceeds seventy per cent of the value of the real estate, G. L. c. 168, § 35, par. 4, requires such payments. Nothing is said in the statutes or the written agreements of the parties as to interest on the payments or fruits of the investment. The general understanding and practice in Massachusetts and elsewhere over a period of some forty years has been that the bank has the right to treat the tax payments as its own. We think that a mortgagor who claims that he has made a different arrangement must show a clear understanding to that effect. See Restatement (Second) of Trusts § 12, comment 1 (1959); 5 A. Scott, Trusts § 530 (3d ed. 1967). No such showing was made.

b. *Resulting and constructive trusts.* The judge ruled that neither the nature of the transaction between the plaintiffs and Suffolk Franklin nor their relationship now calls for the imposition of a resulting trust. We agree, substantially for the same reasons that we uphold his finding that there was no express trust. Cf. *Meskell* v. *Meskell,* 355 Mass. 148, 150-151 (1969); Restatement (Second) of Trusts, Introductory Note to c. 12 (1959).

The judge also ruled that there was no occasion for the

imposition of a constructive trust. We are not asked to set aside his finding that there was no fraud, and we have held that there was no fiduciary relationship. See *Kelly* v. *Kelly,* 358 Mass. 154, 156 (1970). No doubt the contracts between the plaintiffs and the bank were "adhesion" contracts, but we are not prepared to hold that they were unconscionable in the aspects here in issue. See *Lechmere Tire & Sales Co.* v. *Burwick,* 360 Mass. 718, 720-721 (1972). Customers who adhere to standardized contractual terms ordinarily "understand that they are assenting to the terms not read or not understood, subject to such limitations as the law may impose." See Restatement (Second) of Contracts § 237, comment b (Tent. Drafts Nos. 1-7, 1973).

The enrichment of the bank may have been unjust in some sense. Apparently the Legislature thought so when it enacted G. L. c. 183, § 61, inserted by St. 1973, c. 299, § 1, effective July 1, 1975. But most of the unjust enrichment, if any, enriched the bank's depositors at the time. The plaintiffs do not suggest that those depositors should now disgorge their excess returns. Thus a judgment of restitution would ultimately result in a transfer of funds from present and future depositors to compensate for excess payments to past depositors. Doubtless for this reason the Legislature enacted its reform with an effective date over two years after enactment. We do not think we should go further in disrupting legitimate expectations than the Legislature was willing to go.

Moreover, the statutory reform requires that interest be paid "at least once a year at a rate and in a manner to be determined by the mortgagee." We infer that the Legislature thought the amount of the banks' unjust enrichment would be very difficult to measure by any objective standards. We are not prepared to substitute our judgment on this point for that of the Legislature. In this aspect, this case is a good illustration of the advantages of legislative law reform as compared with reform by judicial decision. There was no such unjust enrichment, we hold, as to justify the imposition of a constructive trust.

4. *Disposition.* We hold that there was no reversible

error in the judge's orders, findings and conclusions of law
reported to us. The case is remanded to the Superior Court
for further proceedings consistent with this opinion.

*So ordered.*