NICHOLAS MCPICKOLUS REALTY CORPORATION & another *vs.* JAMAICA PLAIN COOPERATIVE BANK & another.  August 5, 1983.  *Mortgage,* Foreclosure.

On January 7, 1976, the plaintiff realty corporation ("McPickolus") purchased from one Siersdale a dilapidated rental property ("property") for a nominal consideration, but subject to a mortgage given by Siersdale in 1973 to the defendant bank.  On February 26, 1976, the mortgage payments being then four months in arrears, McPickolus entered into an agreement with the bank by which the bank recast the mortgage to bring arrearages up to date, adding arrearages to principal, and McPickolus agreed to assume the mortgage payments.  One of the items then in arrears related to real estate taxes payable to Boston.  The agreement allocated $900.43 to such arrearages, but it later became a source of dispute whether that figure was intended to represent arrearages in tax payments to the city or arrearages by Siersdale in his payments to the bank's escrow account.  After recasting the mortgage, the bank added the $900.43 to the previous balance in the tax escrow account ($1,623.90) together with the tax escrow portion (approximately $195) of the monthly payments McPickolus made for the next two years.  From the account the bank made substantial tax payments in the years 1976, 1977, and 1978.  In November, 1977, the city asserted a lien for unpaid taxes for the year 1975, when Siersdale had been the owner.  McPickolus, whose principal was both a lawyer and a licensed real estate broker but who had not obtained a title search or a certificate of municipal liens prior to purchasing the property, demanded an explanation from the bank, which seems to have been unable to disgorge coherent information from its computer. McPickolus then stopped its mortgage and tax escrow payments, taking the position that it was entitled to have the bank determine the validity of the city's claim and (if we understand the plaintiffs' argument correctly) pay any sum owed and that it (McPickolus) was entitled to withhold its payments in the meantime.  Shortly after payments stopped, the bank applied the entire remaining balance in the tax escrow account to the payment of a then current tax bill, and after ten months of arrearages made a foreclosure sale.  The plaintiffs seek in this action to have the sale declared unlawful.

1.  Whether money is in fact due to the city for 1975 taxes cannot be ascertained from the evidence introduced at trial.  No contention is made that the bank diverted any money from the tax escrow account to other purposes.  The plaintiffs' contention seems to be that the bank warranted at the time McPickolus assumed the mortgage that taxes due the city were current and that the city's assertion cast upon the bank a duty to investigate the claim and pay for it, if valid, from its own funds.  To this contention there are two answers: first, that the factual premise is contrary to the judge's finding that the bank's representation was only as to the deficit in payments to the tax escrow account; and, second, that

a dispute with the bank over who should be responsible for the payment of back taxes would not justify McPickolus in terminating its mortgage payments indefinitely. In this connection we observe that the plaintiffs' arrearages far exceeded in amount the city's claim for 1975 taxes (compare *Jackson* v. *Miller,* 11 Mass. App. Ct. 1005 [1981]); that by the terms of the mortgage the bank had a power but not a duty to collect tax escrow payments; and that the bank did in fact provide McPickolus with an annual accounting of funds paid into and disbursed from the tax escrow account from the time McPickolus assumed the mortgage. Compare *Carpenter* v. *Suffolk Franklin Sav. Bank,* 370 Mass. 314, 323-324 (1976). In these circumstances it cannot be ruled that the existence of a dispute over 1975 taxes precluded the bank from foreclosing.

2. There is no merit to the plaintiffs' contention that the bank chilled the foreclosure sale by announcing the existence of the plaintiffs' lis pendens or by making an arrangement beforehand with one of the bidders at the auction to supply mortgage financing. No case is cited for the proposition that the bank was obligated to extend credit to all bidders if it extended it to any, contrast *Manoog* v. *Miele,* 350 Mass. 204 (1966); and it would be contrary to sound policy to require the bank to keep the existence of a lis pendens secret from potential buyers.

*Judgment affirmed.*

*Lawrence L. Blacker* for the plaintiffs.
*James W. Stone* for the defendants.